Jeremy J. Taylor (SBN 249075)
BAKER BOTTS L.L.P.
101 California Street
Suite 3600
San Francisco, California 94111
Phone: (415) 291-6200
Fax: (415) 291-6300
Jeremy.taylor@bakerbotts.com

Elizabeth K. Boggs (SBN 280555)
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
Phone: (650) 739-7500
Fax: (650) 739-7699
Betsy.boggs@bakerbotts.com

*Attorneys for Plaintiff Lyft, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYFT, INC., | Case No. 3:21-cv-01871 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT** |
| v. | |
| QUARTZ AUTO TECHNOLOGIES LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Lyft, Inc. ("Lyft") brings this Complaint for Declaratory Judgment against Defendant Quartz Auto Technologies LLC ("Quartz Auto") as follows:

**FACTUAL BACKGROUND**

1.    In 2012, Lyft launched a peer-to-peer marketplace for on-demand ridesharing and has continued to pioneer innovations aligned with its mission to improve people's lives with the world's best transportation. Today, Lyft is one of the largest multimodal transportation platforms in the United States and Canada.

2.    Lyft's ridesharing marketplace connects drivers with riders via the Lyft mobile application in cities across the United States and in select cities in Canada. Lyft's ridesharing marketplace allows riders to use their cars less and offers a viable alternative to car ownership. Lyft continually launches new innovations on its platform and has invested heavily in research and development.

3.    Counsel for Quartz Auto previously identified U.S. Patent Nos. 7,007,013; 9,691,275; 6,944,443; and 6,847,871 (collectively the "Patents-in-Suit") to Lyft in a presentation. Quartz Auto alleged the Patents-in-Suit were relevant to Lyft and sought to extract payment from Lyft to license a portfolio including the Patents-in-Suit.

4.    On February 16, 2021, counsel for Quartz Auto e-mailed to Lyft's counsel claim charts alleging infringement of the Patents-in-Suit by Lyft, writing, "We believe this demonstrates additional value to Lyft of taking a license under the Quartz Auto portfolio." *See* Exhibit A. The attachment to the e-mail included, *inter alia*, claim charts for the Patents-in-Suit purporting to demonstrate infringement of the Patents-in-Suit by Lyft. *Id.*

5.    As explained herein, Lyft does not infringe the Patents-in-Suit and files this Complaint for declaratory judgment to clear itself of the allegations cast by Quartz Auto over Lyft and its products.

6.    Quartz Auto has, in the last year, sued multiple ridesharing and delivery app platforms (including Lyft) in multiple courts across the country for alleged infringement of its patents. *See, e.g.*, *Quartz Auto Technologies LLC v. Postmates Inc.*, Civil Action No. 1-20-cv-01673 (D. Del.); *Quartz Auto Technologies LLC v. Uber Technologies, Inc.*, Civil Action No. 1-

20-cv-00720 (W.D. Tex.); *Quartz Auto Technologies LLC v. Lyft, Inc.*, Civil Action No. 1-20-cv-00719 (W.D. Tex.).

### PARTIES

7.      Plaintiff Lyft, Inc. is a corporation duly organized and existing under the laws of the state of Delaware.  Its principal place of business is located at 185 Berry Street, Suite 5000, San Francisco, California 94107.

8.      Defendant Quartz Auto holds itself out as a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 301 S. Fremont Ave, Baltimore, MD 21230.  *See Quartz Auto Technologies LLC v. Postmates Inc.*, Civil Action No. 1-20-cv-01673 (D. Del.), Compl. at 1, ECF No. 1; *Quartz Auto Technologies LLC v. Uber Technologies, Inc.*, Civil Action No. 1-20-cv-00720 (W.D. Tex.), Compl. at 1, ECF No. 1; *Quartz Auto Technologies LLC v. Lyft, Inc.*, Civil Action No. 1-20-cv-00719 (W.D. Tex.), Compl. at 1, ECF No. 1.

9.      On information and belief, Quartz Auto is a Maryland limited liability company with its resident agent as Keith Machen, 301 S. Fremont Ave, Baltimore, MD 21230.  *See* Exhibit B.

### NATURE OF THE CASE

10.      Lyft seeks a declaratory judgment that it does not infringe Patents-in-Suit, which are attached as Exhibits C through F respectively.  Each patent is identified herein by the last three digits of its issued patent number.

11.      This relief is necessary because Quartz Auto has: (a) asserted ownership of the Patents-in-Suit; and (b) accused Lyft of infringing the Patents-in-Suit, including by sending to counsel for Lyft claim charts purporting to show infringement by Lyft of the Patents-in-Suit.  *See* Exhibit A.

12.      The accused Lyft products and/or services are provided by Lyft.  *See* Exhibit A.

13.      Lyft denies that it has infringed any claim of any of the Patents-in-Suit.  Therefore, an actual controversy exists between Lyft and Quartz Auto.

### JURISDICTION AND VENUE

14.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201, 2202, 1331, and

1338(a), because this action arises under the laws of the United States, and in particular the Patent Act of the United States, 35 U.S.C. § 100 *et seq*., and seeks relief under the Federal Declaratory Judgment Act.

15.     This Court has personal jurisdiction over Quartz Auto.

16.     This Court has personal jurisdiction over Quartz Auto at least because Quartz Auto has more than minimum contacts with the Northern District of California such that jurisdiction over Quartz Auto in this District does not offend traditional notions of fair play and substantial justice.

17.     Defendant Quartz Auto has purposefully directed its activities at residents of the Northern District of California, including by making a presentation to Lyft's counsel, Jeremy Taylor of the San Francisco office of Baker Botts LLP, proposing that Lyft take a license to the Patents-in-Suit.  Lyft is a corporation with its principal place of business in San Francisco, California (in this District).  Mr. Taylor is an attorney in this District and was located in this District during the presentation, and Quartz Auto was aware that Mr. Taylor was located in this District during the presentation.

18.     Quartz Auto further purposefully directed its activities at residents of the Northern District of California by sending claim charts to Lyft, through Lyft's counsel, alleging infringement of the Patents-in-Suit by Lyft.  *See* Exhibit A.

19.     On information and belief, Quartz Auto has also alleged patent infringement by other corporations based in California and in this District, including by filing suits alleging infringement of patents against other corporations based in San Francisco and this District, including at least Postmates Inc. and Uber Technologies, Inc.  *See Quartz Auto Technologies LLC v. Postmates Inc.*, Civil Action No. 1-20-cv-01673 (D. Del.), Compl. at 1, ECF No. 1; *Quartz Auto Technologies LLC v. Uber Technologies, Inc.*, Civil Action No. 1-20-cv-00720 (W.D. Tex.), Compl. at 1, ECF No. 1.  On information and belief, Quartz Auto has asserted at least one of the Patents-in-Suit against at least Uber Technologies, Inc.  *See Quartz Auto Technologies LLC v. Uber Technologies, Inc.*, Civil Action No. 1-20-cv-00720 (W.D. Tex.), Compl. at 6–7, ECF No. 1.

20.     On information and belief, Quartz Auto is also contemplating alleging infringement of the Patents-in-Suit against other companies located in this District.

21. On information and belief, Quartz Auto has entered into licensing agreements to the Patents-in-Suit with corporations having a principal place of business in the Northern District of California, including Uber Technologies, Inc. and Postmates Inc.

22. Lyft's claims in this action for declaratory judgment of non-infringement arise out of and relate to Quartz Auto's activities within California and this District, as Quartz Auto asserts that the activities, products, and/or services of Lyft infringe the Patents-in-Suit.

23. Lyft's principal place of business is in this District.

24. Further, for example, Quartz Auto asserts that Lyft's "backend query processing," which enables Lyft products provided in this District, infringes the '013 Patent. *See* Exhibit A at 3.

25. As a further example, Quartz Auto asserts that Lyft's "backend timetable processing for Lyft Line," which enables Lyft products provided in this District, infringes the '275 Patent. *See* Exhibit A at 14.

26. As a third example, Quartz Auto asserts that Lyft "rideshare" products, offered and provided in this District, infringe the '443 Patent. *See* Exhibit A at 27.

27. As a fourth example, Quartz Auto asserts that "autonomous vehicle fleets" operated by Lyft in this District infringe the '871 Patent. *See* Exhibit A at 42.

28. Further, the assertion of personal jurisdiction over Quartz Auto is reasonable and fair, including because Quartz Auto has participated in other activity directed towards enforcement of the Patents-in-Suit in the District. For example, on information and belief, Quartz Auto has entered into licensing agreements to the Patents-in-Suit with companies in this District, including Uber Technologies, Inc. and Postmates Inc.

29. Venue is proper in this District pursuant to at least 28 U.S.C. § 1391(b), which governs venue for declaratory judgment actions. Venue is proper at least under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this action occurred in this District. Venue is also proper in this District because Lyft is located in this District and has received Quartz Auto's charges of infringement in this District, and because this Court has personal jurisdiction over Quartz Auto.

30. An actual controversy exists between Lyft and Quartz Auto over non-infringement

of the Patents-in-Suit at least because Quartz Auto asserted ownership of the Patents-in-Suit, identified Lyft products by name that allegedly infringe the Patents-in-Suit, provided exemplary claim charts to Lyft purporting to show the alleged infringement, and identified specific examples of alleged infringement by Lyft.

## COUNT 1

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,007,013)

31.  Lyft fully incorporates paragraphs 1 through 30 as if set forth fully in this section.

32.  Quartz Auto has asserted that it is the owner of the '013 Patent.

33.  Quartz Auto alleges that certain activities, products, and/or services of Lyft infringe certain claims of the '013 Patent.  *See* Exhibit A at 3.

34.  As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Lyft infringes the claims of the '013 Patent such that a declaratory judgment of non-infringement is warranted.

35.  Lyft has not infringed, directly or indirectly, literally or under the doctrine of equivalents, the claims of the '013 Patent by or through making, using, offering for sale, selling within the United States and/or its importing of its products and/or services.

36.  The '013 Patent purports to concern "performing fast computation of metric queries" by "segment[ing] metric regions into disjoint primitive atomic units."  Exhibit C at Abstract.  The Patent describes a metric space as "a set of elements in which there is defined a distance between any pair of elements in the set," *id.* at 2:34–35, and describes atomic shapes as "region[s] which do[] not require additional partitioning in order to undergo off-line computation." *Id.* at 2:16–19.

37.  Claim 1 of the '013 Patent provides as follows:

1. A method comprising:

preparing, in anticipation of a query related to a metric space, a representation of a region to be used in forming a response to said query, said method further including the steps of:

obtaining a mathematical format of said region within said metric space;

disaggregating said region into a set of atomic shapes; and

forming the representation of said region by preprocessing and storing at least one property for at least one of said atomic shapes.

38. Lyft does not infringe claim 1 of the '013 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '013 Patent, including at least Lyft's accused "Backend Query Processing," *see* Exhibit A at 3, do not meet the limitations of claim 1 literally or under the doctrine of equivalents.

39. For example, without limitation, Lyft does not "prepar[e], in anticipation of a query related to a metric space, a representation of a region to be used in forming a response to said query" as required by claim 1 and as alleged by Quartz Auto. Contrary to Quartz Auto's allegations, *see* Exhibit A at 6, Lyft does not have a "metric space" as defined by the '013 Patent and Lyft does not calculate or define "a distance between any pair of elements in the set," *see* Exhibit C at 1:52, or otherwise "preprocess" or "store" any property for any "atomic shape[]." *See* Exhibit C at 8:42–44. At least for these reasons, Lyft does not infringe claim 1 of the '013 Patent. The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 1 and the claims depending from it are not infringed for additional reasons.

40. Claim 21 of the '013 Patent provides as follows:

21. A method comprising:

forming a representation of locations of a plurality of geographical regions disaggregated into atomic components;

preparing a response to a spatial query involving determination of whether a point location intersects one of said geographical regions; and

preparing a response to said spatial query involving determination of whether any of said geographical regions intersect.

41. Lyft does not infringe claim 21 of the '013 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '013 Patent, including at least Lyft's accused "Backend Query Processing," *see* Exhibit A at 3, do not meet the limitations of claim 21 literally or under the doctrine of equivalents.

42. For example, without limitation, Lyft does not prepare "a response to a spatial query

involving determination of whether a point location intersects one of said geographical regions" as required by claim 21 and as alleged by Quartz Auto.  The '013 Patent defines "spatial query" as a "metric quer[y] in which the units of distance measurements include feet, miles, meters, kilometers, or such, and in which regions are geographical regions."  Exhibit C at 1:54–56.  The '013 Patent further defines "metric query" as a "comparison of the relative distances of sets (and/or elements) in a metric space including container regions and containee regions."  Exhibit C at 2:36–38. Contrary to Quartz Auto's allegations, *see* Exhibit A at 3–6, Lyft does not have a "metric space" as defined by the '013 Patent and Lyft does not calculate or define "a distance between any pair of elements in the set," *see* Exhibit C at 1:52, or otherwise "preprocess" or "store" any property for any "atomic shape[]."  *See* Exhibit C at 8:42–44.  Consequently, Lyft does not prepare a "response to a spatial query" as required by claim 21 of the '013 Patent.  At least for these reasons, Lyft does not infringe claim 21 of the '013 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 21 and the claims depending from it are not infringed for additional reasons.

43.     Claim 29 of the '013 Patent provides as follows:

29. An apparatus comprising:

means for preparing a representation of a region in anticipation of a query related to a metric space, said representation being used in forming a response to said query;

means for obtaining a mathematical format of a region within said metric space;

means for disaggregating said region into a set of atomic shapes; and

means for forming the representation of said region by preprocessing and storing at least one property for at least one of said atomic shapes.

44.     Lyft does not infringe claim 29 of the '013 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '013 Patent, including at least Lyft's accused "Backend Query Processing," *see* Exhibit A at 3, do not meet the limitations of claim 29 literally or under the doctrine of equivalents.

45.     For example, without limitation, Lyft does not have a "means for preparing a representation of a region in anticipation of a query related to a metric space, said representation

being used in forming a response to said query" or a "means for obtaining a mathematical format of a region within said metric space" as required by claim 29 and as alleged by Quartz Auto. Contrary to Quartz Auto's allegations, *see* Exhibit A at 3–6, Lyft does not have a "metric space" as defined by the '013 Patent and Lyft does not calculate or define "a distance between any pair of elements in the set," *see* Exhibit C at 1:52, or otherwise "preprocess" or "store" any property for any "atomic shape[]." *See* Exhibit C at 8:42–44.  Consequently, Lyft does not prepare a response to a "query related to a metric space" or "obtain a mathematical format of a region within said metric space" as required by claim 29 of the '013 Patent.  At least for these reasons, Lyft does not infringe claim 29 of the '013 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 21 and the claims depending from it are not infringed for additional reasons.

46.     For at least the foregoing reasons, Lyft does not and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '013 Patent.

47.     There is an actual, substantial, continuing, and justiciable controversy between Lyft and Quartz Auto regarding whether Lyft infringes, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '013 Patent.

48.     Accordingly, Lyft is entitled to a declaratory judgment that Lyft does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '013 Patent.

<u>**COUNT 2**</u>

**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT
OF U.S. PATENT NO. 9,691,275)**

49.     Lyft fully incorporates paragraphs 1 through 48 as if set forth fully in this section.

50.     Quartz Auto has asserted that it is the owner of the '275 Patent.

51.     Quartz Auto alleges that certain activities, products, and/or services of Lyft infringe certain claims of the '275 Patent.  *See* Exhibit A.

52.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Lyft infringes the claims of the '275 Patent such that a declaratory judgment of non-infringement is warranted.

53.     Lyft has not infringed, directly or indirectly, literally or under the doctrine of equivalents, the claims of the '275 Patent by or through making, using, offering for sale, selling within the United States and/or its importing of its products and/or services.

54.     The '275 Patent purports to concern "a transportation network and particularly to adjusting vehicle departure times in a transportation network." Exhibit D at 1:6–8.  The '275 Patent describes providing an output "in the form of an adapted timetable having one or more timing adjusted from a timing of a baseline timetable" and that "can include a schedule of departures for vehicles of a transportation network." *Id.* at 12:40–45.  The '275 Patent further describes the "adapted timetable can alter one or more certain departure times to reduce the overall wait time of passengers," and "an adapted timetable can yield advantageous results by determining a cumulative wait time attributable to application of an adapted timetable." *Id.* at 20:53–63.  According to the '275 Patent, "[a] cumulative wait time can be determined as a sum of wait times at all stations of a transportation network." *Id.* at 13:35–37.

55.     Claim 1 of the '275 Patent provides as follows:

  1. A method comprising:

> obtaining, by one or more processor, passenger information of one or more passenger traveling within a transportation network, wherein the passenger information includes passenger location information; and

> providing, by the one or more processor, an output based on a processing of the passenger information, wherein the processing includes processing to determine an adapted timetable for providing a reduced cumulative wait time.

56.     Lyft does not infringe claim 1 of the '275 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '275 Patent, including at least Lyft's accused "Backend Timetable Processing," *see* Exhibit A at 14, do not meet the limitations of claim 1 literally or under the doctrine of equivalents.

57.     For example, without limitation, Lyft does not "provid[e], by the one or more processor, an output based on a processing of the passenger information, wherein the processing includes processing to determine an adapted timetable for providing a reduced cumulative wait time" as required by claim 1 and as alleged by Quartz Auto.  *See* Exhibit A at 16.  Contrary to Quartz Auto's allegation, the accused Lyft Line product paired riders with overlapping routes

1    without using an "adapted timetable" and used matching techniques that do not rely on cumulative

2    wait time.  At least for these reasons, Lyft does not infringe claim 1 of the '275 Patent.  The

3    allegations in this paragraph are examples and do not preclude Lyft from contending that claim 1

4    and the claims depending from it are not infringed for additional reasons.

5            58.    Claim 12 of the '275 Patent provides as follows:

6              12. A computer program product comprising:

7                  a computer readable storage device readable by one or more processing circuit and
8                  storing instructions for execution by one or more processor for performing a
                   method comprising:

9                  obtaining passenger information of one or more passenger traveling within a
10                 transportation network, wherein the passenger information includes passenger
                   location information; and

11                 providing one or more output based on a processing of the passenger information,
12                 wherein the processing includes processing to determine an adapted timetable for
                   providing a reduced cumulative wait time.

13           59.    Lyft does not infringe claim 12 of the '275 Patent or any claim dependent thereon

14    at least because the activities and/or products of Lyft accused of infringing the '275 Patent,

15    including at least Lyft's accused "Backend Timetable Processing," *see* Exhibit A at 14, do not meet

16    the limitations of claim 12 literally or under the doctrine of equivalents.

17           60.    For example, without limitation, Lyft does not "provid[e] one or more output based

18    on a processing of the passenger information, wherein the processing includes processing to

19    determine an adapted timetable for providing a reduced cumulative wait time" as required by

20    claim 12 and as alleged by Quartz Auto.  *See* Exhibit A at 16.  Contrary to Quartz Auto's allegation,

21    the accused Lyft Line product paired riders with overlapping routes without using an "adapted

22    timetable" and used matching techniques that do not rely on cumulative wait time.  At least for

23    these reasons, Lyft does not infringe claim 12 of the '275 Patent.  The allegations in this paragraph

24    are examples and do not preclude Lyft from contending that claim 12 and the claims depending

25    from it are not infringed for additional reasons.

26           61.    Claim 17 of the '275 Patent provides as follows:

27              17. A system comprising:

28                  a memory;

---

COMPLAINT FOR DECLARATORY JUDGMENT OF
NONINFRINGEMENT                                10        CASE NO. 3:21-CV-01871

1    one or more processor in communication with the memory; and

2    program instructions executable by the one or more processor via the memory to
     perform a method, the method comprising:

3

4    obtaining passenger information of one or more passenger traveling within a
     transportation network, wherein the passenger information includes passenger
     location information; and

5

6    providing one or more output based on a processing of the passenger information,
     wherein the processing includes determining one or more flow matrix, using the
     one or more flow matrix to determine a cumulative wait time, and determining an
7    adapted timetable using the cumulative wait time, wherein the output includes the
     adapted timetable, the adapted timetable having one or more adjusted vehicle
8    timing, and wherein the output is transmitted to a computing node of a vehicle
     operator of the transportation network.

9

10   62.    Lyft does not infringe claim 17 of the '275 Patent or any claim dependent thereon

11   at least because the activities and/or products of Lyft accused of infringing the '275 Patent,

12   including at least Lyft's accused "Backend Timetable Processing," *see* Exhibit A at 14, do not meet

13   the limitations of claim 17 literally or under the doctrine of equivalents.

14         63.    For example, without limitation, Lyft does not "provid[e] one or more output based

15   on a processing of the passenger information, wherein the processing includes determining one or

16   more flow matrix, using the one or more flow matrix to determine a cumulative wait time, and

17   determining an adapted timetable using the cumulative wait time, wherein the output includes the

18   adapted timetable, the adapted timetable having one or more adjusted vehicle timing, and wherein

19   the output is transmitted to a computing node of a vehicle operator of the transportation network"

20   as required by claim 17 and as alleged by Quartz Auto.  Contrary to Quartz Auto's allegation, the

21   accused Lyft Line product paired riders with overlapping routes without using an "adapted

22   timetable" and used matching techniques that do not rely on cumulative wait time.  At least for

23   these reasons, Lyft does not infringe claim 17 of the '275 Patent.  The allegations in this paragraph

24   are examples and do not preclude Lyft from contending that claim 17 and the claim depending from

25   it are not infringed for additional reasons.

26         64.    For at least the foregoing reasons, Lyft does not and has not infringed, directly or

27   indirectly, literally or under the doctrine of equivalents, any claims of the '275 Patent.

28         65.    There is an actual, substantial, continuing, and justiciable controversy between Lyft

and Quartz Auto regarding whether Lyft infringes, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '275 Patent.

66. Accordingly, Lyft is entitled to a declaratory judgment that Lyft does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '275 Patent.

## COUNT 3

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,944,443)

67. Lyft fully incorporates paragraphs 1 through 66 as if set forth fully in this section.

68. Quartz Auto has asserted that it is the owner of the '443 Patent.

69. Quartz Auto alleges that certain activities, products, and/or services of Lyft infringe certain claims of the '443 Patent. *See* Exhibit A.

70. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Lyft infringes the claims of the '443 Patent such that a declaratory judgment of non-infringement is warranted.

71. Lyft has not infringed, directly or indirectly, literally or under the doctrine of equivalents, literally or under the doctrine of equivalents, the claims of the '443 Patent by or through making, using, offering for sale, selling within the United States and/or its importing of its products and/or services.

72. The '443 Patent purports to concern "notifying a user of a portable communication device" by "determin[ing] . . . whether the location of the second portable communication device is within a same region containing the first portable communication device." Exhibit E at Abstract. The '443 Patent describes a query to "determine[] whether the portable communication device 102B of the other group member is within a threshold distance" or "determin[ing] whether the portable communication device 102B of the other group member is in the same region or cell . . . as the portable communication device 102A." *Id.* at 7:28–31. The '443 Patent further describes determining "an approximate meeting location . . . for the two group members with respective portable communication devices." *Id.* at 8:14–17.

//

73.     Claim 1 of the '443 Patent provides as follows:

1.  A method for notifying a user of a portable communication device, the method of comprising:

determining a location of a first portable communication device of a first user;

determining a location of a second portable communication device of a second user;

determining whether the location of the second portable communication device is within a same region containing the first portable communication device;

notifying the first user of a presence of the second user if the location of the second portable communication device is within the same region containing the first portable communication device;

determining a common meeting point for the first and second users;

notifying the first user of the common meeting point on the first portable communication device; and

notifying the second user of the common meeting point on the second portable communication device.

74.     Lyft does not infringe claim 1 of the '443 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '443 Patent, including at least Lyft's accused "Lyft Rideshare," *see* Exhibit A at 27, do not meet the limitations of claim 1 literally or under the doctrine of equivalents.

75.     For example, without limitation, Lyft does not "determin[e] whether the location of the second portable communication device is within a same region containing the first portable communication device" or "determin[e] a common meeting point for the first and second users" as required by claim 1 and as alleged by Quartz Auto.  Contrary to Quartz Auto's allegations, the Lyft application may show drivers on the Lyft app based on factors related to a match or expected match, including an estimated time of arrival, rather than notifying a rider of the presence of a driver if the driver is "within the same region" as the rider, and users select a pick-up location when requesting a ride rather than Lyft determining a "common meeting point" as required by the claim.  At least for these reasons, claim 1 is not infringed.  The allegations in this paragraph are examples and do not preclude Lyft from contending that claim 1 is not infringed for additional reasons.

//

COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT                 13                 CASE NO. 3:21-CV-01871

76.     Claim 2 of the '443 Patent provides as follows:

2.  A method for notifying a user of a portable communication device, the method comprising:

determining whether a first user is in a group for a second user, the group being predefined and stored in a storage device;

if so, determining whether the second user has permission to location the first user;

if so, determining an approximate geographical location of the first portable communication device of the first user;

notifying the second user of the approximate geographical location of the first user;

determining a common meeting point; and

notifying the first user of the common meeting point on the first portable communication device.

77.     Lyft does not infringe claim 2 of the '443 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '443 Patent, including at least Lyft's accused "Lyft Rideshare," *see* Exhibit A at 27, do not meet the limitations of claim 2 literally or under the doctrine of equivalents.

78.     For example, without limitation, Lyft does not "determin[e] whether a first user is in a group for a second user, the group being predefined and stored in a storage device" or "determin[e] a common meeting point" as required by claim 2 and as alleged by Quartz Auto. Contrary to Quartz Auto's allegations, the Lyft application may show drivers on the Lyft app based on factors related to a match or expected match, including an estimated time of arrival, but that process is not "predefined" as required by claim 2.  In addition, users select a pick-up location when requesting a ride rather than Lyft determining a "common meeting point" as required by the claim. At least for these reasons, claim 2 is not infringed.  The allegations in this paragraph are examples and do not preclude Lyft from contending that claim 2 is not infringed for additional reasons.

79.     Claim 3 of the '443 Patent provides as follows:

3.  A method for notifying a user of a portable communication device, the method comprising:

determining a location of a first portable communication device of a first user;

---

determining a location of a second portable communication device of a second user;

determining whether the first user has permission to locate the second user;

if so, determining whether the location of the second portable communication device is within a same region containing the first portable communication device;

if so, notifying the first user of the location of the second portable communication device of the second user;

determining a common meeting point for the first and second users;

notifying the first user of the common meeting point on the first portable communication device; and

notifying the second user of the common meeting point on the second portable communication device.

80.     Lyft does not infringe claim 3 of the '443 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '443 Patent, including at least Lyft's accused "Lyft Rideshare," *see* Exhibit A at 27, do not meet the limitations of claim 3 literally or under the doctrine of equivalents.

81.     For example, without limitation, Lyft does not "determin[e] whether the location of the second portable communication device is within a same region containing the first portable communication device" or "determin[e] a common meeting point for the first and second users" as required by claim 3 and as alleged by Quartz Auto.  Contrary to Quartz Auto's allegations, the Lyft application may show drivers on the Lyft app based on factors related to a match or expected match, including an estimated time of arrival, rather than notifying a rider of the presence of a driver if the driver is "within a same region" as the rider, and users select a pick-up location when requesting a ride rather than Lyft determining a "common meeting point" as required by the claim.  As another example, without limitation, Lyft does not "determin[e] whether the first user has permission to locate the second user" as required by claim 3 and as alleged by Quartz Auto.  Contrary to Quartz Auto's allegations, Lyft does not grant riders the ability to locate drivers, as the act of a driver turning on their mobile application merely opens the driver up to receiving ride requests.  At least for these reasons, claim 3 is not infringed.  The allegations in this paragraph are examples and do not preclude Lyft from contending that claim 3 is not infringed for additional reasons.

82.     For at least the foregoing reasons, Lyft does not and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '443 Patent.

83.     There is an actual, substantial, continuing, and justiciable controversy between Lyft and Quartz Auto regarding whether Lyft infringes, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '443 Patent.

84.     Accordingly, Lyft is entitled to a declaratory judgment that Lyft does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '443 Patent.

<u>**COUNT 4**</u>

**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,847,871)**

85.     Lyft fully incorporates paragraphs 1 through 84 as if set forth fully in this section.

86.     Quartz Auto has asserted that it is the owner of the '871 Patent.

87.     Quartz Auto alleges that certain activities, products, and/or services of Lyft infringe certain claims of the '871 Patent.  *See* Exhibit A.

88.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Lyft infringes the claims of the '871 Patent such that a declaratory judgment of non-infringement is warranted.

89.     Lyft has not infringed, directly or indirectly, literally or under the doctrine of equivalents, the claims of the '871 Patent by or through making, using, offering for sale, selling within the United States and/or its importing of any products and/or services.

90.     The '871 Patent purports to concern "[c]ontinuously monitoring automobile operations, performance and operating conditions from the remote diagnostic centers through [c]ontinuous wireless transmissions so that faults may be immediately recognized and corrected." Exhibit F at Abstract.  According to the '871 Patent, "[a] wireless connection is provided between the transceiver and a remote station that furnishes diagnostics on automobiles based upon and responsive to an input representative of the sensed parameters."  *Id*. at 4:64–5:1.  The diagnostic center then "provides an output relative to any defective operating condition in the automobile . . . back to the automobile over the wireless path."  *Id*. at 5:1–5.

91.     Claim 1 of the '871 Patent provides as follows:

1.   A system for continuously monitoring and correcting operational conditions in an automobile comprising:

a plurality of sensing devices in said automobile each device for respectively continuously sensing an operational parameter of said automobile;

a wireless transmitter in said automobile for transmitting said continuously sensed parameters to a diagnostic station remote from said automobile;

apparatus in said diagnostic station for analyzing said parameters in order to determine defective operational conditions in said automobile; and

apparatus associated with said diagnostic station for wireless transmission of data relative to said determined defective operating conditions back to said automobile.

92.     Lyft does not infringe claim 1 of the '871 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '871 Patent, including at least the accused "autonomous vehicle fleet" ("Accused AV System"), *see* Exhibit A at 42, do not meet the limitations of claim 1 literally or under the doctrine of equivalents.

93.     For example, without limitation, the Accused AV System does not have "a wireless transmitter in [the] automobile for transmitting said continuously sensed parameters to a diagnostic station remote from said automobile" as required by claim 1 and as alleged by Quartz Auto. *See* Exhibit A at 45.  Contrary to Quartz Auto's allegations, the Accused AV System does not wirelessly transmit any "operational parameter" to a "diagnostic station remote from said automobile" as required by claim 1.  In addition, the Accused AV System does not wirelessly transmit "data relative to said determined defective operating conditions back to said automobile" as required by claim 1. No data concerning defective operating conditions is transmitted back to automobiles in the Accused AV System.  At least for these reasons, Lyft does not infringe claim 1 of the '871 Patent. The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 1 and the claims depending from it are not infringed for additional reasons.

94.     Claim 10 of the '871 Patent provides as follows:

10.  A method for continuously monitoring and correcting operational conditions in an automobile comprising:

continuously sensing a plurality of operational parameters of said automobile;

wirelessly transmitting said continuously sensed parameters to a diagnostic station remote from said automobile;

analyzing said parameters in said diagnostic station in order to determine defective operational conditions in said automobile; and

wirelessly transmitting data relative to said determined defective operating conditions from said diagnostic station back to said automobile.

95.    Lyft does not infringe claim 10 of the '871 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '871 Patent, including at least the accused "autonomous vehicle fleet" ("Accused AV System"), *see* Exhibit A at 42, do not meet the limitations of claim 10 literally or under the doctrine of equivalents.

96.    For example, without limitation, the Accused AV System does not "wirelessly transmitting said continuously sensed parameters to a diagnostic station remote from said automobile" as required by claim 10 and as alleged by Quartz Auto.  In addition, the Accused AV System does not "wirelessly transmit[] data relative to said determined defective operating conditions from said diagnostic station back to said automobile" as required by claim 10.  No data concerning defective operating conditions is transmitted back to automobiles in the Accused AV System.  At least for these reasons, Lyft does not infringe claim 10 of the '871 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 10 and the claims depending from it are not infringed for additional reasons.

97.    Claim 19 of the '871 Patent provides as follows:

19.    A computer program having code recorded on a computer readable medium for continuously monitoring and correcting operational conditions in an automobile comprising:

means in said automobile continuously sensing each of a plurality of operational parameters of said automobile;

means in said automobile for transmitting said continuously sensed parameters to a diagnostic station remote from said automobile;

means in said diagnostic station for analyzing said parameters in order to determine defective operational conditions in said automobile; and

means associated with said diagnostic station for wireless transmission of data relative to said determined defective operating conditions back to said automobile.

98.    Lyft does not infringe claim 19 of the '871 Patent or any claim dependent thereon

at least because the activities and/or products of Lyft accused of infringing the '871 Patent, including at least the accused "autonomous vehicle fleet" ("Accused AV System"), *see* Exhibit A at 42, do not meet the limitations of claim 19 literally or under the doctrine of equivalents.

99.     For example, without limitation, the Accused AV System does not "transmit[] said continuously sensed parameters to a diagnostic station remote from said automobile" as required by claim 19 and as alleged by Quartz Auto.  In addition, the Accused AV System does not perform "wireless transmission of data relative to said determined defective operating conditions back to said automobile" as required by claim 19.  No data concerning defective operating conditions is transmitted back to automobiles in the Accused AV System.  At least for these reasons, Lyft does not infringe claim 19 of the '871 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 19 and the claims depending from it are not infringed for additional reasons.

100.     For at least the foregoing reasons, Lyft does not and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '871 Patent.

101.     There is an actual, substantial, continuing, and justiciable controversy between Lyft and Quartz Auto regarding whether Lyft infringes, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '871 Patent.

102.     Accordingly, Lyft is entitled to a declaratory judgment that Lyft does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '871 Patent.

## RESERVATION OF RIGHTS

103.     Lyft hereby reserves the right to supplement with additional claims or defenses as discovery proceeds in this matter.

## JURY DEMAND

WHEREFORE, Lyft respectfully requests that this Court enter judgment in its favor and against Quartz Auto as follows:

A.     For judgment that Lyft and Lyft's products do not infringe and have not infringed, directly or indirectly, literally or under the doctrine of equivalents, the Patents-in-Suit;

B.     For a finding that this case is exceptional under 35 U.S.C. § 285;

1  C. For Lyft's costs and reasonable attorneys' fees incurred in connection with this

2  action, to be paid by Quartz Auto;

3  D. An award of any and all equitable relief to which Lyft may be entitled; and

4  E. Such other and further relief to which Lyft may show itself to be entitled and/or as

5  the Court may deem just and proper.

6

7

8  Dated: March 17, 2021                              Respectfully submitted,

9                                                     **BAKER BOTTS L.L.P.**

10
                                                      By: __/s/ Jeremy J. Taylor_____
11                                                    Jeremy J. Taylor (SBN 249075)
                                                      BAKER BOTTS L.L.P.
12                                                    101 California Street
                                                      Suite 3600
13                                                    San Francisco, California 94111
                                                      Phone: (415) 291-6200
14                                                    Fax: (415) 291-6300
                                                      Jeremy.taylor@bakerbotts.com
15
                                                      Elizabeth K. Boggs (SBN 280555)
16                                                    BAKER BOTTS L.L.P.
                                                      1001 Page Mill Road
17                                                    Building One, Suite 200
                                                      Palo Alto, California 94304
18                                                    Phone: (650) 739-7500
                                                      Fax: (650) 739-7699
19                                                    Betsy.boggs@bakerbotts.com

20                                                    *Attorneys for Plaintiff Lyft, Inc.*

21

22

23

24

25

26

27

28