Jon A. Birmingham (Cal. Bar No. 271034)
jbirmi@fitcheven.com
**FITCH, EVEN, TABIN & FLANNERY LLP**
20929 Ventura Boulevard, Suite 47403
Woodland Hills, California 91364
Telephone: (818) 650-1392
Facsimile: (312) 577-7007

*Attorney for Defendant*
QUARTZ AUTO TECHNOLOGIES LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| LYFT, INC., | Case No. 4:21-CV-01871-JST |
| Plaintiff, | |
| v. | |
| QUARTZ AUTO TECHNOLOGIES LLC | **QUARTZ AUTO TECHNOLOGIES LLC'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM IN SUPPORT** |
| Defendant. | |
| | Date:      July 8, 2021 |
| | Time:      2:00 p.m. |
| | Place:     Court Room 6, 2nd Floor Oakland |
| | Judge:     Jon S. Tigar |

**TO THE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, July 8, 2021, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, located at 1301 Clay Street, Courtroom 6, Oakland, CA 94102, the Honorable Jon S. Tigar presiding, Defendant Quartz Auto Technologies LLC ("Quartz") will, and hereby does move the Court for an order dismissing Plaintiff Lyft, Inc.'s ("Plaintiff" or "Lyft") complaint. Dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Dismissal is further warranted pursuant to this Court's discretion under the Declaratory Judgment Act and the anticipatory suit exception to the first-to-file rule as a matter of procedural fairness.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities included herewith, the accompanying Declarations of Timothy P. Maloney and Keith Machen, and all other evidence and argument that may be submitted on this motion.

Dated: May 24, 2021

Respectfully submitted

By:  /s/ Jon A. Birmingham

Jon A. Birmingham (Cal. Bar No. 271034)
jbirmi@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY LLP
20929 Ventura Boulevard, Suite 47403
Woodland Hills, California 91364
Telephone: (818) 650-1392
Facsimile: (312) 577-7007
*Attorney for Defendant*
*Quartz Auto Technologies LLC*

---

Quartz Auto Technologies LLC's
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support          i

Case No. 4:21-CV-01871-JST

# TABLE OF CONTENTS

**Pages**

I.  INTRODUCTION ...........................................................................................................1

II.  FACTUAL BACKGROUND ........................................................................................1

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER QUARTZ, AND THIS ACTION SHOULD BE DISMISSED IN ITS ENTIRETY .........................................5

    A.  Quartz Is Not Subject to General Personal Jurisdiction In This District .............................7

    B.  Quartz Is Not Subject To Specific Personal Jurisdiction In This District ..........................9

        1.  Lyft Fails To Identify Sufficient Contacts To Give Rise To Specific Jurisdiction..........................................................................................10

        2.  This Court Should Decline to Exercise Specific Jurisdiction Under The Third Prong Of The Test Because Doing So Would Be Unfair and Unreasonable........................................................................................15

IV.  THIS COURT SHOULD EXERCISE ITS DISCRETION UNDER THE DECLARATORY JUDGMENT ACT AND DISMISS THIS ACTION.....................................17

V.  THIS ACTION MUST LIKEWISE BE DISMISSED PURSUANT TO THE ANTICIPATORY SUIT EXCEPTION TO THE FIRST-TO-FILE RULE ................................19

VI.  CONCLUSION.............................................................................................................21

Quartz Auto Technologies LLC's                    Case No. 4:21-CV-01871-JST
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support           ii

# TABLE OF AUTHORITIES

**Pages**

<u>**Cases**</u>

*Adobe Sys. Inc. v. Tejas Res., LLC.,*
No. C-14-0868 EMC, 2014 WL 4651654 (N.D. Cal. Sept. 17, 2014) .............................. 15

*Akro Corp v. Luker,*
45 F.3d 1541 (Fed. Cir. 1995) ..................................................................................... 9

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
946 F.2d 622 (9th Cir. 1991) ..................................................................................... 19

*Alzheimer's Inst. of Am. v. Comentis, Inc.,*
C 09-2772, 2009 WL 10672148, (N.D. Cal. Nov. 13, 2009) ............................................ 7

*Autogenomics, Inc. v. Oxford Gene Technology Ltd.,*
566 F.3d 1012 (Fed. Cir. 2009).................................................................................... 8

*Avocent Huntsville Corp. v. Aten Int'l Co.,*
552 F.3d 1324 (Fed. Cir. 2008)......................................................................... 6, 12, 13

*BNSF Railway Co. v. Tyrrell,*
137 S. Ct. 1549 (2017)............................................................................................. 6

*Breckenridge Pharm., Inc. v. Metabolite Laboratories, Inc.,*
444 F.3d 1356 (Fed. Cir. 2006).......................................................................... 10, 13

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,*
137 S. Ct. 1773 (2017)............................................................................................. 9

*British Telecommc'ns v. McDonnell Douglas Corp.,*
Case No. 93–cv–00677 MHP, 1993 WL 149860 (N.D. Cal. May 3, 1993)....................... 19

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)............................................................................................. 6, 7

*Campbell Pet Co. v. Miale,*
542 F.3d 879 (Fed. Cir. 2008).................................................................................... 7

*Charles Schwab & Co. v. Duffy,*
1998 WL 879659 (N.D. Cal. Dec. 8, 1998) ................................................................. 20

*Church of Scientology of CA v. U.S. Dep't. of the Army,*
611 F.2d 738 (9th Cir. 1979) ................................................................................... 19

Quartz Auto Technologies LLC's                                    Case No. 4:21-CV-01871-JST
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support                    iii

*Comm'cns Test Design, Inc. v. Contec, LLC*,
    952 F.3d 1356 (Fed. Cir. 2020)..........................................................................................19

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).....................................................................................................6, 7

*Elecs. For Imaging, Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005)..........................................................................................19

*Etekcity Corp. v. Devine LEDS Ltd.*,
    SA-CV-191246-PSG-ASX, 2019 WL 7945607 (C.D. Cal. Oct. 30, 2019) ......................12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)...........................................................................................6, 9, 10

*Fresenius USA, Inc. v. Transonic Systems, Inc.*,
    207 F. Supp. 2d 1009 (N.D. Cal. 2001) .............................................................................18

*Huth v. Hartford Ins. Co.*,
    298 F.3d 800 (9th Cir. 2002) .............................................................................................17

*Inamed Corp. v. Kuzmak*,
    249 F.3d 1356 (Fed. Cir. 2001)...............................................................................6, 9, 16

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .............................................................................................................6

*Jack Henry & Associates, Inc. v. Plano Encryption Techs. LLC*,
    910 F.3d 1199 (Fed. Cir. 2018)............................................................................9, 14, 15

*Kerotest Mfg. Co. v. C-O-Two-Fire Equip. Co.*,
    342 U.S. 180 (1952) ...........................................................................................................18

*Knapp v. Depuy Synthes Sales Inc.*,
    983 F. Supp. 2d 1171 (E.D. Cal. 2013)..............................................................................20

*Lear Siegler, Inc. v. Adkins*,
    330 F.2d 595 (9th Cir. 1964) .............................................................................................17

*Lenovo (U.S.) Inc. v. IPCom GmbH & Co., KG*,
    2019 WL 6771784 (N.D. Cal. Dec. 12, 2019) ...................................................................10

*Liberty Surplus Ins. Corp. v. Perma-Pipe, Inc.*,
    C 13-0908 RS, 2013 WL 4529473 (N.D. Cal. Aug. 26, 2013).........................................19

*Nat'l Broom Co. v. Brookstone Co.*,
    2009 WL 2365677, (N.D. Cal. July 30, 2009)...................................................................20

Quartz Auto Technologies LLC's                   Case No. 4:21-CV-01871-JST
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support         iv

*Ontel Prods., Inc. v. Project Strategies Corp.*,
　899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)...................................................................... 20

*Pebble Beach Co. v. Caddy*,
　453 F. 3d 1151 (9th Cir. 2006) ...................................................................................... 12

*Quartz Auto Technologies LLC v. Lyft, Inc.*,
　1-20-cv-00719 (W.D. Tex.) ........................................................................................ 2, 17

*Quartz Auto Technologies LLC v. Postmates Inc.*,
　1-20-cv-01673 (D. Del.) .................................................................................................. 12

*Quartz Auto Technologies LLC v. Uber Technologies, Inc.*,
　1-20-cv-00720 (W.D. Tex.) ............................................................................................ 12

*Quartz Auto Techs. LLC v. Lyft, Inc.*,
　1-21-cv-00467 (D. Del.) .................................................................................................... 5

*Radio Systems Corp. v. Accession, Inc.*,
　638 F.3d 785 (Fed. Cir. 2011) ........................................................................................ 11

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
　148 F.3d 1355 (Fed. Cir. 1998)................................................................................. passim

*Schmitt v. JD Edwards World Solutions Co.*,
　No. C01-1009-VRW, 2001 WL 590039 (N.D. Cal. May 18, 2001) ............................... 18

*Silent Drive, Inc. v. Strong Indus., Inc.*,
　326 F.3d 1194 (Fed. Cir. 2003)....................................................................................... 10

*Slack Techs., Inc. v. Phoji, Inc.*,
　20-CV-01509-EMC, 2020 WL 4701174 (N.D. Cal. Aug. 13, 2020) .......................... 14, 15

*Trimble Inc. v. PerDiemCo LLC*,
　No. 19-2164, (Fed. Cir. May 12, 2021) ..................................................................... passim

*Universal Operations Risk Mgmt, LLC v. Global Rescue LLC*,
　No. C11-5969, 2012 WL 2792444 (N.D. Cal. July 9, 2012)........................................... 19

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
　522 F. Supp. 2d 1265 (S.D. Cal. 2007)........................................................................... 17

*Wilton v. Seven Falls Co.*,
　515 U.S. 277 (1995)......................................................................................................... 17

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
　848 F.3d 1346 (Fed. Cir. 2017)................................................................................... 6, 13

Quartz Auto Technologies LLC's                                    Case No. 4:21-CV-01871-JST
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support                    v

*Xoxide, Inc. v. Ford Motor Co.*,
    448 F. Supp. 2d 1188 (C.D. Cal. 2006) ........................................................................ 19

*Z-Line Designs, Inc. v. Bell'O Int'l LLC*,
    218 F.R.D. 663 (N.D. Cal. 2003) ......................................................................... 19, 20

**<u>Statutes</u>**

Cal. Civ. P. Code § 410.10 ........................................................................................ 5

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(2) ........................................................................................... 5

Quartz Auto Technologies LLC's          Case No. 4:21-CV-01871-JST
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support           vi

## I.   INTRODUCTION

Plaintiff Lyft Inc.'s ("Lyft") First Amended Complaint for Declaratory Judgment ("First Amended Complaint") against Quartz Auto Technologies LLC ("Quartz") seeks a declaration of noninfringement of U.S. Patent Nos. 7,007,013; 9,691,275; 6,944,443; 6,847,871 and 7,958,215 (collectively, the "Patents-in-Suit"). (*See* ECF No. 15.) Quartz respectfully requests that this Court dismiss the First Amended Complaint against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Additionally, or alternatively, Quartz requests that the Court dismiss the First Amended Complaint pursuant to this Court's discretion under both the Declaratory Judgment Act and the anticipatory suit exception to the first-to-file rule.

Lyft's First Amended Complaint fails to establish that this Court has personal jurisdiction over Quartz. Quartz does not have any "continuous and systematic" contacts with California that warrant the application of general personal jurisdiction, nor does Quartz have the necessary "minimum contacts" within the forum to confer specific personal jurisdiction. Given Quartz's complete lack of ties to California, the exercise of personal jurisdiction (either general or specific) over it is improper under both the California long-arm statute and the Due Process Clause.

In addition, the First Amended Complaint should be dismissed pursuant to this Court's discretion under the Declaratory Judgment Act and/or the anticipatory suit exception to the first-to-file rule in view of an action filed by Quartz in Delaware shortly after being served with the complaint in this action. Lyft's decision to file this lawsuit is a transparent attempt to regain negotiating leverage in the parties' ongoing settlement discussions related to patents asserted in an action pending in Texas and additional Quartz patents in the wake of several related IPR losses. This Court should recognize Lyft's effort for what it is—an improper use of a declaratory judgment action.

As set forth in further detail herein, Quartz respectfully requests that this Court dismiss Lyft's First Amended Complaint.

## II.   FACTUAL BACKGROUND

This motion is based on the Declarations of Keith Machen ("Machen Decl.") and Timothy Maloney ("Maloney Decl."), and the allegations of Lyft's First Amended Complaint and associated

1  documents. (ECF No. 15.) Any allegations in Lyft's First Amended Complaint are assumed to be true

2  solely for the purposes of this Motion to Dismiss.

3       Quartz is a Delaware limited liability company with its principal place of business in Baltimore,

4  Maryland. (Machen Decl. ¶¶ 4–5.) Quartz has no connection to the state of California or to this judicial

5  District. Quartz does not maintain, and has never maintained, a place of business in California, including

6  within the Northern District of California. (*Id.* ¶ 7.) It does not own, lease, or rent any real property in

7  California. (*Id.* ¶ 8.) Aside from its current counsel of record, whose law firm has offices in California, it

8  has never engaged any individuals, as contractors, representatives, or otherwise, that reside in the state of

9  California. (*Id.* ¶ 11.) It has never maintained any bank accounts or personal property in California or in

10  this District. (*Id.* ¶ 10.) It is not registered to conduct business in the state of California and does not have

11  a registered agent for service of process here. (*Id.* ¶ 6.)

12       Lyft is a Delaware corporation with its principal place of business located at 185 Berry Street,

13  Suite 5000, San Francisco, California 94107. (ECF No. 15 ¶ 8.)

14       Quartz and Lyft are currently engaged in a patent infringement dispute in the Western District of

15  Texas ("Texas Action"). In that action, filed February 28, 2020, Quartz accused Lyft of infringing U.S.

16  Patent Nos. 6,446,004; 6,807,464; 7,370,085; 7,958,215; and U.S. 9,460,616 (collectively the "Asserted

17  Texas Patents") by its operation, direction, and control of ride-hailing services offered through its

18  technology platform. *Quartz Auto Technologies LLC v. Lyft, Inc.*, Civil Action No. 1-20-cv-00719, ECF

19  No. 1 (W.D. Tex.) ("*Quartz I*"). In response, in August 2020, Lyft filed three different *inter partes* review

20  petitions in the Patent Trial and Appeal Board ("PTAB") challenging the validity of three of the Asserted

21  Texas Patents (the '215, '085, and '464 patents). *See Lyft, Inc. v. Quartz Auto Techs. LLC*, IPR2020-1450,

22  Paper 1 (PTAB Aug. 10, 2020); IPR2020-1535, Paper 1 (PTAB Aug. 27, 2020); IPR2020-1548, Paper 1

23  (PTAB Aug. 31, 2020).

24       Since early on in the Texas Action, counsel for Lyft has repeatedly reached out to counsel for

25  Quartz about settlement and Lyft's potential interest in a license to both the Asserted Texas Patents as

26  well as others in Quartz's portfolio. Quartz's current counsel took over representation of Quartz and

27  thereafter appeared in the Texas Action in June–August 2020. (Maloney Decl. ¶ 3.) On July 9, 2020,

28

Quartz Auto Technologies LLC's
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support        2        Case No. 4:21-CV-01871-JST

1  Lyft's counsel first contacted Quartz's counsel to discuss settlement. (*Id.* ¶ 4.) On July 13, 2020, Quartz's

2  counsel spoke with Lyft's counsel over the phone. In that discussion, both parties' counsel confirmed their

3  client's interests in exploring opportunities to resolve the case, but, given Quartz's counsel's recent

4  engagement and transition of representation of the case from Quartz's previous counsel, agreed to table

5  the discussion for a few weeks. (*Id.*)

6       In early August 2020, the parties' counsel again spoke, and Quartz's counsel indicated that

7  Quartz's principals desired to have a direct discussion with Lyft's businesspeople. (*Id.* ¶ 5.) Lyft's counsel

8  inquired about the type of settlement that Quartz was contemplating and whether there was a range of

9  settlement or specific monetary demand that Quartz was hoping to achieve in a settlement, and expressed

10  uncertainty that Lyft would be willing to have the requested business discussion without a specific

11  demand. (*Id.*) Quartz's counsel confirmed Quartz's willingness to resolve not only the Texas Action but

12  also other potential issues involving other Quartz patents and/or involving other Lyft products and

13  services, and provided general guidance regarding the settlement range that Quartz felt was reasonable.

14  (*Id.*).

15       On October 30, 2020, Lyft's followed-up with Quartz's counsel. He again reiterated concern about

16  Quartz's request for a business-to-business discussion but also represented that if a discussion between

17  decisionmakers was "the only way forward," he would try to find available dates for that conversation to

18  occur. (*Id.* ¶ 6.) On November 2, the parties' counsel again conferred telephonically regarding settlement

19  prospects. (*Id.* ¶ 7.) At the request of Lyft's counsel, Quartz's counsel provided additional details

20  regarding Quartz's position on a fair settlement range. (*Id.*) In response, on November 16, Lyft's counsel

21  followed-up and indicated that Lyft was interested in continuing discussions, but would benefit from a

22  better understanding of the framework behind Quartz's proposed damages settlement range. (*Id.*) In

23  response to that request, Quartz and its counsel prepared a "Licensing Value Discussion" presentation,

24  which Quartz's counsel presented to Lyft's counsel on November 19, 2020. (*Id.* ¶ 8.) That presentation

25  discussed Quartz's overall patent portfolio, additional patents that Quartz believed may be of interest to

26  Lyft for its various business units, including the '013, '275, '443, and '871 patents (collectively, the

27  "Additional Patents"), a summary of Lyft's potential damages exposure, as well as settlement approaches

28

Quartz Auto Technologies LLC's                                             Case No. 4:21-CV-01871-JST
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support                 3

that Quartz was willing to consider. (*Id.*) Quartz's counsel also explained its willingness to provide claim charts demonstrating how the patents in the presentation applied to Lyft's business. (*Id.*) Lyft's counsel indicated that the presentation was helpful to understanding Quartz's position and asked permission to share the presentation with his client, to which Quartz agreed. (*Id.*)

 In follow-up to that presentation, the parties' counsel again conferred telephonically on December 4 and 10. Lyft's counsel indicated that Lyft was occupied with other matters but remained open to continuing discussions. (*Id.* ¶ 9.)

In early January, Quartz settled a separate case it had brought against Uber, which asserted similar patents as those at issue in the Texas Action. (*Id.* ¶ 10.)

On January 28, 2021, Lyft's counsel again contacted Quartz's counsel concerning potential settlement, acknowledging the Uber settlement and indicating that it may make sense to renew the parties' previous discussions again. (*Id.* ¶ 11.) On January 30, 2021, the parties' counsel spoke by phone. Lyft's counsel requested information about Quartz's recent settlement with Uber and implied that the fact that Uber was no longer challenging Quartz in litigation may affect Lyft's settlement position. (*Id.*) Lyft's counsel also asked if Quartz was willing to provide any additional information regarding its settlement expectations or the basis for those expectations.

Lyft's counsel followed-up again on February 5, renewing the request for information relating to the Uber settlement and indicating it may help move the parties' settlement discussions forward. (*Id.* ¶ 12.) In response to Lyft's request for additional support and explanation of Quartz's estimated settlement range, on February 16, 2021, Quartz's counsel provided Lyft's counsel with additional exemplary claim charts via email providing (1) additional details regarding how the Additional Patents apply to Lyft's portfolio of services and products, and (2) details regarding how Asserted Texas Patents apply to Lyft's eBike and eScooter shared rental services, which are not accused in the Texas Action. (*Id.* ¶ 13.) The email did not threaten Lyft with imminent litigation but indicated that the charts were being provided to demonstrate additional value of the broad patent license being discussed. (*Id.*) Quartz's counsel indicated that the metaphorical "ball" was now in "Lyft's court." (*Id.*) On February 22, 2021, Lyft's counsel

1   confirmed by telephone that he received the February 16, 2021 email and claim charts and indicated that

2   his client was considering making an offer in the next week or so. (*Id.* ¶ 14.)

3       Shortly after that, in the first two weeks of March, the PTAB issued decisions denying institution

4   in each of Lyft's three IPR proceedings.  *Lyft, Inc. v. Quartz Auto Technologies LLC*, IPR2020-1450,

5   Paper 48 (PTAB Mar. 4, 2021); IPR2020-1535, Paper 50 (PTAB Mar. 2, 2021); IPR2020-1548, Paper 47

6   (PTAB Mar. 11, 2021).

7       Rather than respond to Quartz's February correspondence as it had indicated it would do, on March

8   17, 2021, Lyft filed its initial declaratory judgment complaint in this Court requesting a declaration of

9   noninfringement for the Additional Patents (the "Initial Complaint"). (*See* ECF No. 1.) That same day,

10  Lyft's counsel forwarded a courtesy copy of the complaint to Quartz's counsel, indicating that "Lyft is

11  happy to explore resolving this dispute without litigation, and if Quartz is interested, perhaps you and I

12  can discuss way to further explore resolution at your convenience later this week or next." (Maloney Decl.

13  ¶ 16.) Quartz was served with the Initial Complaint on March 26, 2021. (ECF No. 12.)

14      On March 29, 2021, the Western District of Texas issued an order in the Texas Action which, in

15  part, dismissed the '215 patent from that case for lack of venue. *See Quartz I*, ECF No. 60. That same day,

16  Quartz filed a complaint against Lyft in Delaware ("Delaware Action") alleging infringement of both the

17  Additional Patents (i.e., the '871, '443, '013, and '275 patents) from Lyft's Initial Complaint in this action

18  as well as the '215 patent, which was newly-dismissed from the Texas Action. *See Quartz Auto Techs.*

19  *LLC v. Lyft, Inc.*, Civil Action No. 1-21-cv-00467, ECF No. 1 (D. Del.).

20      In direct response to Quartz's filing of the Delaware Action, Lyft filed its First Amended

21  Complaint in this Court on April 6, 2021 in which it added a request for a declaration of noninfringement

22  of the '215 patent. (ECF No. 15.) As a result, the patents at issue in this case now mirror those in the

23  Delaware Action.

24  **III.    THIS COURT LACKS PERSONAL JURISDICTION OVER QUARTZ, AND THIS
         ACTION SHOULD BE DISMISSED IN ITS ENTIRETY**

25

26      In a patent case, including a declaratory judgment action, the personal jurisdiction inquiry is

27  governed by Federal Circuit law. *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352

28

(Fed. Cir. 2017). It is the plaintiff's burden to make a prima facie showing that this Court has jurisdiction over the defendant. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328–29 (Fed. Cir. 2008). If a court lacks personal jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(b)(2). As explained in further detail below, Lyft's First Amended Complaint fails to establish that this Court has personal jurisdiction (either general or specific) over Quartz in this action, and Lyft's First Amended Complaint should be dismissed in its entirety.

A district court may exercise personal jurisdiction over a non-resident defendant if a two-part inquiry is satisfied. First, the state's long-arm statute must permit service of process on the defendant. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, the defendant must maintain "minimum contacts" with the forum state such that the action would not offend "traditional notions of fair play and substantial justice." *Id.* Because California's long-arm statute is coextensive with the Due Process Clause, Cal. Civ. P. Code § 410.10, these "two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). In determining whether jurisdiction is proper, the court must focus on the nature and extent of the defendant's relationship to the forum State. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

There are two types of personal jurisdiction: general and specific. *Id.* General jurisdiction exists only where a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). Specific jurisdiction is narrower and requires a defendant to take some act by which it purposefully avails itself of the privilege of conducting activities within the forum. *Ford*, 141 S. Ct. at 1024–25. Specific jurisdiction also requires the plaintiff's claims to "arise out of or relate to the defendant's contacts" with the forum. *Id.* at 1025.

Once it has been established that a defendant has minimum contacts with a forum State, the court still must consider whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). A court may consider: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in

1    obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most

2    efficient resolution of controversies; and (5) the shared interest of the several States in furthering

3    fundamental substantive social policies. *Id.* at 477.

4        Although Lyft's First Amended Complaint fails to distinguish between general and specific

5    personal jurisdiction, (*see* ECF No. 15 ¶¶ 15–32), this deficiency is ultimately of no consequence; Lyft

6    has not—and cannot—establish that Quartz is subject to personal jurisdiction in California under either

7    approach.

8        **A.  Quartz Is Not Subject to General Personal Jurisdiction In This District**

9        Unless a corporate defendant is incorporated or headquartered in the forum State, a court may only

10   exercise general jurisdiction over the defendant in "exceptional" circumstances. *Daimler AG*, 571 U.S. at

11   140 n.19. The exercise of general jurisdiction is improper when the non-resident defendant has only

12   "sporadic and insubstantial contacts" with the forum State. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884

13   (Fed. Cir. 2008). In the same vein, this Court has recognized that the standard for establishing general

14   personal jurisdiction is "fairly high." *Alzheimer's Inst. of Am. v. Comentis, Inc.*, C 09-2772, 2009 WL

15   10672148, at *2 (N.D. Cal. Nov. 13, 2009) (citation omitted).

16       Here, Quartz is not incorporated or headquartered in California, and indeed has no ties to

17   California, much less the "continuous and systematic" contacts required to confer general jurisdiction over

18   it in this state. Quartz is a Delaware limited liability company with a principal place of business in

19   Baltimore, Maryland, with no offices, headquarters, or mailing addresses in California. (Machen Decl.

20   ¶¶ 4–7.) Quartz does not have any employees, operations, or assets in California, and it does not lease,

21   maintain, or own any property in California. (*Id.* ¶¶ 8–12.) Quartz is not registered to do business in

22   California, holds no bank accounts in this state, and has not previously filed a lawsuit in a California court.

23   (*Id.* ¶¶ 6, 10, 13.) Aside from the present action, Quartz has likewise never been sued in California. (*Id.*

24   ¶ 14.)

25       Notwithstanding Quartz's outright lack of contact with California, Lyft's First Amended

26   Complaint attempts to manufacture personal jurisdiction based on (1) two specific settlement

27   communications, which include a telephonic settlement discussion with Lyft's counsel including

28

discussion of the Patents-in-Suit held on November 19, 2020 and the follow-up communication of exemplary claim charts to Lyft's counsel via email on February 16, 2021; (2) separate and independent lawsuits filed by Quartz against other unrelated entities in the Western District of Texas and the District of Delaware; and (3) a settlement and license agreement between Quartz and Uber, a company with headquarters located in California. (ECF No. 15 ¶¶ 16–30.) None of these contacts, alone or in combination, are sufficient to render Quartz "essentially at home" in California so as to confer general jurisdiction in this state.

The Federal Circuit's decision in *Autogenomics, Inc. v. Oxford Gene Technology Ltd.* is instructive. There, the court found that a non-resident defendant's contacts with the forum—California— were too "sporadic and insubstantial" to establish general personal jurisdiction. 566 F.3d 1012, 1017–18 (Fed. Cir. 2009). The plaintiff alleged general jurisdiction based upon contacts that included (a) licensing negotiations concerning the asserted patent via email and in person in California; (b) entering into 10 nonexclusive licenses with California-based companies for technology related to the asserted patent; (c) entering into a supply agreement with a California-based business, but for which there was no relationship to the asserted patent; (d) attending conferences and trade shows in California over a four-year period; (e) selling products to a California company; and (f) publishing an article to a website accessible by California residents. *Id.* at 1014–16. The court held that even in combination, such contacts were insufficient evidence of continuous and systematic contacts, thus concluding that it lacked general personal jurisdiction over the defendant. *Id.* at 1018.

Here, the alleged contacts set forth by Lyft are even more attenuated than those found deficient in *Autogenomics*. For instance, Quartz has not attended conference or trade shows, nor sold any product or services into California. (Machen Decl. ¶¶ 16, 17.)  Quartz's settlement negotiations with Lyft's counsel concerning the Patents-in-Suit were initiated by Lyft's counsel, and did not involve travel to California. In contrast to the 10 licensees in *Autogenomics*, Quartz has but one (Uber).

Accordingly, this Court should decline to exercise general personal jurisdiction over Quartz.

**B.  Quartz Is Not Subject To Specific Personal Jurisdiction In This District**

Lyft also fails to establish a prima facie case that the exercise of specific personal jurisdiction over Quartz is proper.

In considering whether to assert specific jurisdiction over a non-resident defendant, courts apply a three-part test to determine whether (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) assertion of personal jurisdiction is reasonable and fair. *Inamed*, 249 F.3d at 1360. The first two factors correspond to the "minimum contacts" prong for which the plaintiff bears the burden to satisfy. Once satisfied, the burden shifts to the defendant to show that under the third factor jurisdiction would be unreasonable. *Akro Corp v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995). "Precedent illustrates the dominance of concerns for due process and fairness" for purposes of assessing specific jurisdiction. *Jack Henry & Associates, Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1205 (Fed. Cir. 2018).

As recently clarified by the Federal Circuit, the inquiry into whether personal jurisdiction is proper is fact-specific and does not rest upon bright-line rules or special patent policies. *Trimble Inc. v. PerDiemCo LLC*, No. 19-2164, slip op. at 10 (Fed. Cir. May 12, 2021). Instead, as the Supreme Court has recently reaffirmed, the inquiry must focus on "the nature and extent of 'the defendant's relationship to the forum State.'" *Ford*, 141 S. Ct. at 1024 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1779 (2017)). Activities that may be relevant to the inquiry of whether a defendant purposefully directed its activities at a resident of the forum state include, for example: sending communications into the forum state, taking into account the nature and scope of the communications; physically entering the forum for reasons relating to the eventual claim; or entering into agreements or doing business with other entities in the forum state. *Trimble*, slip. op. at 10–12.

In the specific context of patent infringement demand letters, there is no general rule that sending such communications into a forum state can never by itself create specific personal jurisdiction. *Id.* at 13–14. Indeed, the Federal Circuit has both found specific jurisdiction to be proper and to be lacking when such letters were involved depending on the nature and extent of the communications. *Compare Trimble*, slip op. at 14–15 (sending 22 communications, including demands of increasing intensity, over a three-

1  month period sufficient to create jurisdiction) *with Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,

2  148 F.3d 1355, 1360–61 (Fed. Cir. 1998) (three communications containing a cease and desist and license

3  offer insufficient to create jurisdiction); *see also Trimble*, slip. op. at 13 (confirming *Red Wing* was

4  correctly decided).

5       The Federal Circuit and other courts alike have also found it relevant to consider "other activities

6  directed at the forum and related to the cause of action" beyond mere demand letters or licensing efforts

7  to determine whether the application of specific jurisdiction is proper. *Silent Drive, Inc. v. Strong Indus.,*

8  *Inc.*, 326 F.3d 1194, 1202, 1206 (Fed. Cir. 2003) (internal quotations omitted); *see also Lenovo (U.S.) Inc.*

9  *v. IPCom GmbH & Co., KG,* 2019 WL 6771784, at *10 (N.D. Cal. Dec. 12, 2019) ("When . . . settlement

10  negotiations are the only basis for minimum contacts, the plaintiff must satisfy the second prong of the

11  jurisdictional analysis by showing 'other activities' directed at the forum."). In brief, "the crux of the due

12  process inquiry should focus first on whether the defendant has had contact with parties in the forum state

13  beyond . . . mere attempts to license the patent at issue there." *Breckenridge Pharm., Inc. v. Metabolite*

14  *Laboratories, Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006). While these prior decisions are couched in terms

15  of assessing "other activities," they are grounded in the basic principle, reaffirmed by the Supreme Court

16  and Federal Circuit alike, that it is the "the nature and extent of 'the defendant's relationship to the forum

17  State'" *Ford*, 141 S. Ct. at 1024, that must be analyzed. Where the nature and scope of the communications

18  alone do not rise to the level of purposeful availment, other activities related to the patentee's contacts

19  with the forum must also be examined.

20       **1.   Lyft Fails To Identify Sufficient Contacts To Give Rise To Specific Jurisdiction**

21       Lyft bases its assertion of personal jurisdiction over Quartz on three purported contacts:

22  (1) settlement communications between Lyft and Quartz related to the Texas Action, including a licensing

23  presentation and follow-up claim charts regarding patents discussed in that presentation; (2) Quartz's

24  enforcement efforts against third parties Uber and Postmates in districts outside this forum; and (3) a

25  license granted by Quartz to Uber. These contacts, alone or in combination, do not support this Court

26  exercising specific personal jurisdiction over Quartz.

27

28

Quartz Auto Technologies LLC's                    Case No. 4:21-CV-01871-JST
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support         10

First, Lyft's attempts to rely upon Quartz's communications of a settlement presentation and claim charts to Lyft are insufficient in and of themselves to establish specific personal jurisdiction over Quartz. Of note, these communications were sent in response to queries by Lyft regarding settlement and Lyft's desire to amicably resolve the Texas Action and other potential disputes regarding other patents owned by Quartz and/or other products and services offered by Lyft. They do not demonstrate that Quartz has purposefully availed itself to the Northern District of California. Even taking into account the more complete universe of communications, detailed above, the communications remain insufficient. These communications are akin to the communications found insufficient to establish personal jurisdiction in *Red Wing*. There, the patent owner sent three letters that alleged infringement and offered to negotiate a nonexclusive license. 148 F.3d at 1357. Similarly, in *Radio Systems Corp. v. Accession, Inc.*, the Federal Circuit found that several e-mails and letters from the patentee's counsel that outlined a patent infringement claim and suggested settlement through a licensing agreement were insufficient to give rise to personal jurisdiction. 638 F.3d 785, 791 (Fed. Cir. 2011). As discussed in further detail below, Lyft has failed to show any other sufficient contacts beyond Quartz's settlement communications to support specific jurisdiction here.

In addition, the communications with Lyft in the instant situation are vastly different than those found to constitute purposeful availment in *Trimble*. There, the patent owner, PerDiemCo, sent 22 communications of escalating force in just a three-month period. Those communications also included explicit threats of the forums in which PerDiemCo would assert its patents against the defendants, identification of PerDiemCo's counsel in one forum, and a draft complaint for the other. *Trimble*, slip op. at 14–15. In contrast, here, Quartz's communications were non-threatening and merely responsive to Lyft's repeated requests to engage in settlement discussions, requests for information needed for Lyft to evaluate Quartz's settlement position and potential settlement options, and Lyft's repeated representations that it genuinely desired to resolve the Texas Action and other potential patent issues with Quartz as a business matter. (Maloney Decl. ¶ 17.) Lyft led Quartz into believing it was interested in continuing the discussions, and it induced Quartz to provide the settlement presentation and related claim charts upon which it now relies to establish personal jurisdiction. However, when it lost its IPRs challenging validity

1   of three of the Quartz patents, Lyft changed tactics to file this action in this Court instead. As explained

2   in *Red Wing*, "principles of fair play and substantial justice afford a patentee sufficient latitude to inform

3   others of its patent rights without subjecting itself to jurisdiction in a foreign forum." 148 F.3d at 1360–

4   61. Application of specific jurisdiction over Quartz based on its limited communications with Lyft

5   regarding potential settlement, taken alone or in combination with the other purported contacts, would not

6   comport with fair play and substantial justice.

7          Second, Lyft points to Quartz's infringement lawsuits filed against Uber and Postmates, companies

8   with operations based in California. (ECF No. 15 ¶ 20.) However, these enforcement efforts are not within

9   this forum—i.e., the Northern District of California. Instead, those lawsuits were filed in the Western

10  District of Texas and District of Delaware, respectively. (Machen Decl. ¶¶ 18, 20.) These lawsuits in other

11  forums do not demonstrate that Quartz purposefully availed itself of the privilege of conducting activities

12  in California: "Evidence of availment is typically action taking place in the forum that invokes the benefits

13  and protections of the laws in the forum . . . ." *Pebble Beach Co. v. Caddy*, 453 F. 3d 1151, 1155 (9th Cir.

14  2006); *see also Avocent*, 552 F.3d at 1334 (explaining that relevant activities include "initiating judicial

15  or extra-judicial enforcement *within the forum*, or entering into an exclusive license agreement or other

16  undertaking which imposes enforcement obligations with a party residing or regularly doing business *in*

17  *the forum*.") (emphasis added); *Etekcity Corp. v. Devine LEDS Ltd.*, SA-CV-191246-PSG-ASX, 2019 WL

18  7945607, at *2 (C.D. Cal. Oct. 30, 2019) ("[A] plaintiff fails to demonstrate minimum contacts when the

19  defendant merely initiates lawsuits in different forums . . . .").

20         Moreover, those lawsuits are not aligned with the Patents-In-Suit put into issue by Lyft here. In

21  this case, the Patents-in-Suit are the '013, '275, '443, '871, and '215 patents. Although the '275 patent

22  and the '215 patent were both asserted against Uber, *Quartz Auto Technologies LLC v. Uber Technologies,*

23  *Inc.*, Civil Action No. 1-20-cv-00720, ECF No. 1, at 6–7 (W.D. Tex.), and the '215 patent was asserted

24  against Postmates, *Quartz Auto Technologies LLC v. Postmates Inc.*, Civil Action No. 1-20-cv-01673,

25  ECF No. 1, at 3–5 (D. Del.), the '443, '013, and '871 patents were not, nor have they since been, asserted

26  in any lawsuits filed by Quartz. (Machen Decl. ¶ 22.) The lack of enforcement of the '443, '013, and '871

27  patents further evidences that a finding of specific jurisdiction here would be improper. *See Avocent*, 552

28

F.3d at 1334 (the question for specific jurisdiction is whether the patentee has engaged in other activities "that relate to the *enforcement . . . of the relevant patents*") (emphasis added); *see also Xilinx*, 848 F.3d at 1353 (". . . we have (appropriately) rejected the existence of contacts concerning other patents as being pertinent to the minimum contacts analysis.")

Finally, Lyft alleges that "Quartz Auto has entered into licensing agreements to the [Asserted] Patents [] with corporations having a principal place of business in the Northern District of California, including Uber Technologies, Inc. and Postmates Inc.," which it argues would support the application of personal jurisdiction. (ECF No. 15 ¶¶ 22, 30.) As an initial matter, Lyft is mistaken that Quartz entered into a separate licensing agreement with Postmates; at the time of the Uber settlement, Postmates had been acquired by Uber and Postmates is deemed an affiliate of Uber for purposes of the agreement. (Machen Decl. ¶ 21.) Moreover, the single agreement with Uber is not sufficient to support specific jurisdiction over Quartz.

Similar to its findings with respect to demand letters, the Federal Circuit has found that the existence of nonexclusive licenses may, or may not, support specific jurisdiction. For example, the Federal Circuit recently found the existence of "around ten nonexclusive licensees" in *Trimble* as supporting the application of specific jurisdiction, whereas in its prior *Red Wing* decision, the Federal Circuit declined to exercise specific jurisdiction where the patentee had 34 nonexclusive licenses in the forum state. *Compare Trimble*, slip op. at 13–14 *with Red Wing*, 148 F.3d at 1359. In *Trimble*, however, the patentee PerDiemCo emphasized its licensing agreements in connection with its 22 aggressive communications pressuring Trimble and ISE to take a license. *See Trimble*, slip op. at 3–4, 14.  In this specific context, the existence of those licenses, while nonexclusive, weighed in favor of finding specific personal jurisdiction, even though prior Federal Circuit authority had suggested that nonexclusive licenses could not support application of specific jurisdiction. *See Breckenridge*, 444 F.3d at 1366 (finding that "a defendant may not be subject to personal jurisdiction . . . where the defendant has successfully licensed the patent in the forum state, *even to multiple non-exclusive licensees*, but . . . has no dealings with those licensees beyond the receipt of royalty income.") (emphasis added); *see also Avocent*, 552 F.3d at 1336 (explaining that exclusive licenses "impose certain obligations to enforce the patent against infringers" that connect the

patentee to the forum, while non-exclusive licenses do not); *Slack Techs., Inc. v. Phoji, Inc.*, 20-CV-01509-EMC, 2020 WL 4701174, at *5 (N.D. Cal. Aug. 13, 2020) ("where a non-exclusive license is involved, an out-of-state patent holder generally does not have the same obligations to the forum state . . . .").

Here, the existence of a single license is vastly different than, for instance, the 10 licenses present in *Trimble*, and significantly less than the 34 licenses present in *Red Wing* where the court nonetheless found specific jurisdiction to be improper. A single license cannot demonstrate that Quartz purposefully availed itself to the Northern District of California.

Further, as explained in *Trimble*, "physically entering the forum . . . to discuss infringement contentions with the [declaratory judgment] plaintiff" is also a relevant contact for the purposeful availment inquiry. *Trimble*, slip op. at 12; *see also Xilinx*, 848 F.3d at 1353 (emphasizing the patentee's physical travel to the forum to discuss infringement contentions as an important consideration in the specific jurisdiction analysis). Here, neither Quartz nor any representative of Quartz has traveled to the Northern District of California for any discussions with Lyft, or any other potential licensees for that matter, further evidencing Quartz's lack of contacts with the forum. (Machen Decl. ¶ 15.)

Moreover, the Federal Circuit's decision in *Jack Henry* does not mandate a different result. Indeed, this Court has already recognized that *Jack Henry* should be construed narrowly based on its "unique set of facts." *Slack Techs., Inc.*, 2020 WL 4701174, at *5–6.

In *Jack Henry*, the patent owner Plano Encryption Technologies ("PET") was a Texas company located in the Eastern District of Texas that sent notice letters to eleven different banks in the Northern District of Texas threatening litigation related to the banks' mobile applications. 910 F.3d at 1201, 1204. Jack Henry & Associates, Inc. provided the allegedly infringing software systems for the banks' mobile apps and indemnified the banks for infringement liability. *Id.* at 1202. Together, Jack Henry and the banks filed a declaratory judgment action against PET in the Northern District of Texas. *Id.* at 1203. PET moved to dismiss for improper venue since its contacts with the Northern District of Texas were insufficient to establish personal jurisdiction, but the district court was unpersuaded. *Id.* On appeal, the Federal Circuit rejected PET's contention that "patent enforcement letters can never provide the basis for jurisdiction in

1   a declaratory judgment action." *Id.* at 1206. But, based on the unique situation presented, and in view of

2   the fact that PET had not argued that litigating in the Northern District of Texas would be burdensome,

3   the Federal Circuit ultimately reasoned that the case was properly venued in the Northern District of Texas.

4   *Id.*

5         This Court recently had the occasion to address *Jack Henry* and declined to follow its holding in

6   *Slack Technologies*. There, the plaintiff had filed a declaratory judgment action in this District and the

7   defendant moved to dismiss based on lack of personal jurisdiction. 2020 WL 4701174, at *1. This Court

8   recognized that "*Jack Henry* involve[d] a unique set of facts." *Id.* at *6. After analyzing the totality of

9   contacts alleged by Slack Technologies, including "more than a dozen communications (both oral and

10  written) about alleged infringement," distribution of its mobile app to users through California-based

11  companies, attending conferences in California, and commercialization efforts in California, the Court

12  granted the defendant's motion to dismiss for lack of personal jurisdiction. *Id.* at *1, 6–8.

13        Unlike the defendant in *Jack Henry*, Quartz has not serially sent dozens of letters to companies

14  located in the Northern District of California, and is also not subject to general jurisdiction in the state of

15  California. Similarly, unlike *Trimble*, Quartz has not sent repeated communications that amplified in

16  intensity including explicit and specific threats to bring lawsuits in two separate states. As the court in

17  *Jack Henry* explained, the specific jurisdiction analysis is dominated by "concerns for due process and

18  fairness." 910 F.3d at 1205. Here, exercising specific jurisdiction over Quartz would both offend due

19  process and create an unfair result given Quartz's complete lack of ties to the forum.

20        **2.   This Court Should Decline to Exercise Specific Jurisdiction Under The Third Prong
             Of The Test Because Doing So Would Be Unfair and Unreasonable**

21        Because Lyft has failed to establish a prima facie case that this Court has specific personal

22  jurisdiction over Quartz, there is no need to consider whether the exercise of specific jurisdiction is

23  reasonable and fair. *Adobe Sys. Inc. v. Tejas Res., LLC.*, No. C-14-0868 EMC, 2014 WL 4651654, at *3

24  (N.D. Cal. Sept. 17, 2014) (if the plaintiff is unable to prove minimum contacts, "the Court need not

25  address [plaintiff's] arguments that the exercise of personal jurisdiction in this action would comport with

26  the concepts of fair play and substantial justice."). Even if this Court does move onto the third prong of

27  the analysis, it too counsels declining to apply specific jurisdiction. In assessing whether jurisdiction

28

Quartz Auto Technologies LLC's                                    Case No. 4:21-CV-01871-JST
Notice of Motion, Motion, Motion to Dismiss
And Memorandum in Support                    15

would offend "traditional notions of fair play and substantial justice," this Court must balance the following factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Inamed*, 249 F.3d at 1363. The balance of the factors show that this Court's exercise of specific jurisdiction over Quartz would be unfair and unreasonable.

Regarding factor (1), it would be unduly burdensome for Quartz—a company with no ties to California that is headquartered over 2000 miles away in Maryland—to litigate this dispute in California. Quartz has no facilities, operations, or employees in California; instead, its employees and operations are in Maryland. Quartz is a small company that would be placed at a disadvantage if forced to expend resources litigating this matter in California. It would be inefficient and expensive to force Quartz to litigate this suit in California, especially when Quartz's preferred forum—Delaware—would have jurisdiction over both parties and is much closer.

Regarding factor (2), California has some interest in adjudicating this dispute since Lyft is headquartered in San Francisco. However, given that both Lyft and Quartz are incorporated in Delaware, and Delaware also has Quartz's mirror lawsuit pending before it, Delaware has a slightly greater interest in adjudicating the dispute. Given these facts, this factor should be viewed in favor of dismissing this action, or at best, as neutral.

Regarding factor (3), Lyft's interest in obtaining relief is unaffected by this Court declining personal jurisdiction. Instead, Lyft can pursue its declaratory judgment claim against Quartz in a forum where Quartz would be properly subject to personal jurisdiction, i.e., Delaware.

In the same vein, concerning factor (4), it would be inefficient to allow the present declaratory judgment action to proceed given the inefficiencies discussed with respect to factor (1) and in light of the co-pending Delaware Action which includes mirror infringement claims for the Patents-in-Suit.

Finally, factor (5) is neutral because this case involves questions of Federal patent law—not state law policy. There is no reason to assume that California would be a more appropriate forum than Delaware.

In sum, factors (1), (2), and (4) weigh in favor of finding that the application of specific jurisdiction over Quartz would be unfair and unreasonable, while factors (3) and (5) are neutral. Quartz has no ties to California, and it could not have reasonably anticipated being haled into court here. Thus, even if the Due Process Clause permitted the exercise of personal jurisdiction in this case, this Court should nonetheless decline to do so on fairness grounds.

## IV.   THIS COURT SHOULD EXERCISE ITS DISCRETION UNDER THE DECLARATORY JUDGMENT ACT AND DISMISS THIS ACTION

The exercise of jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), is "committed to the sound discretion of the federal district courts." *Huth v. Hartford Ins. Co.*, 298 F.3d 800, 802 (9th Cir. 2002). The Declaratory Judgment Act provides courts with "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995). Courts may decline jurisdiction where it appears that the declaratory action "was filed for an improper tactical purpose." *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007). For example, courts have declined to exercise jurisdiction over declaratory actions brought by defendants to secure a favorable forum. *See Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 602 (9th Cir. 1964) ("The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum") (citation omitted).

Here, Lyft's actions in filing this case counsel against exercising jurisdiction. As explained above, the dispute between Quartz and Lyft originated when Quartz filed the Texas Action alleging infringement of the Asserted Texas Patents. *Quartz Auto Techs. LLC v. Lyft, Inc.*, ECF No. 1, Civil Action No. 1-20-cv-00719 (W.D. Tex. Feb. 28, 2020). Since that time, Lyft's counsel has continuously initiated contact with Quartz's counsel regarding potential settlement opportunities. (Maloney Decl. ¶¶ 4–16.) Each time, Quartz has responded, believing that Lyft truly wanted to settle the parties' disputes. (*Id.* ¶ 17.) Prior to this lawsuit, the ball was in Lyft's court. (*Id.* ¶ 13.) However, rather than continue the discussions, as soon as Lyft faced a bump in the road by losing its IPR patent validity challenges, Lyft proceeded to file this declaratory judgment action in a forum where it perceived it could gain an advantage over Quartz.

Lyft's continued initiation of settlement discussions, and then preemptive strike in filing its

1    declaratory judgment action to improperly select its own forum is exactly the type of gamesmanship that

2    warrant discretionary dismissal.

3           For example, in *Fresenius USA, Inc. v. Transonic Systems, Inc.*, this Court used its discretion to

4    decline jurisdiction where there was "no evidence that [the patentee] in any way delayed or intended to

5    avoid filing suit if an amicable resolution could not be achieved." 207 F. Supp. 2d 1009, 1012 (N.D. Cal.

6    2001). There, the defendant had "an outstanding offer to negotiate" the dispute between the parties, but

7    the plaintiff opted to not respond and instead filed a declaratory judgment action. *Id.* at 1010–12. As this

8    Court explained: "exercising jurisdiction over declaratory-relief actions under such circumstances would

9    create a strong disincentive for patentees to communicate with potential infringers before filing suit, for

10   fear of being sued first and thus forced to litigate in the defendant's forum of choice." *Id.* at 1012–13.

11   Similarly, here, Lyft had an outstanding offer to negotiate. But it too chose not to respond and instead

12   filed this action.

13          Lyft's effort to secure its own choice of forum in view of the above is an improper tactical use of

14   a declaratory judgment action. *See Kerotest Mfg. Co. v. C-O-Two-Fire Equip. Co.*, 342 U.S. 180, 185

15   (1952) (an alleged infringer cannot use the Declaratory Judgment Act to give it "a paramount right to

16   choose the forum for trying out questions of infringement and validity"). Under these circumstances, the

17   Court should dismiss this action in favor of the Delaware Action—which is a substantial mirror to the

18   present dispute—since Quartz has a right to select its own forum to adjudicate the Additional Patents. *See*

19   *Schmitt v. JD Edwards World Solutions Co.*, No. C01-1009-VRW, 2001 WL 590039, at *2 (N.D. Cal.

20   May 18, 2001) ("If a court is faced with two suits, a first filed declaratory relief action and a subsequent

21   coercive suit filed in a different court, and the court determines that the declaratory suit is a preemptive

22   suit meant to deprive the natural plaintiff of the forum of his choice, the court should dismiss or stay the

23   declaratory suit.").

24          Accordingly, for this additional reason, Lyft's First Amended Complaint should be dismissed.

25

26

27

28

1

2

**V.    THIS ACTION MUST LIKEWISE BE DISMISSED PURSUANT TO THE ANTICIPATORY SUIT EXCEPTION TO THE FIRST-TO-FILE RULE**

3

To the extent Lyft argues that the instant California Action should proceed instead of the

4

subsequently filed Delaware Action under the "first-to-file" rule, this Court should again exercise its

5

discretion and nonetheless dismiss this action. The first-to-file rule is a principle of federal comity under

6

which the first lawsuit filed generally takes priority over a later lawsuit filed in another jurisdiction relating

7

to the same subject matter and parties. *Liberty Surplus Ins. Corp. v. Perma-Pipe, Inc.*, C 13-0908 RS,

8

2013 WL 4529473, at *4 (N.D. Cal. Aug. 26, 2013); *see also Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp.

9

2d 1188, 1192 (C.D. Cal. 2006). However, the rule is a flexible one subject to this Court's discretion and

10

should not be applied rigidly. *Church of Scientology of CA v. U.S. Dep't. of the Army*, 611 F.2d 738, 750

11

(9th Cir. 1979) (refusing to apply the first-to-file rule); *Universal Operations Risk Mgmt, LLC v. Global*

12

*Rescue LLC*, No. C11-5969, 2012 WL 2792444, at *5 (N.D. Cal. July 9, 2012) ("The most basic aspect

13

of the first-to-file rule is that it is discretionary.").

14

Indeed, in this context, "district courts enjoy a 'double dose' of discretion: discretion to decline to

15

exercise jurisdiction over a declaratory judgment action and discretion when considering and applying the

16

first-to-file rule and its equitable exceptions." *Comm'cns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356,

17

1362–63 (Fed. Cir. 2020); *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005);

18

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). "Circumstances under which the

19

first-to-file rule will not be applied include bad faith, anticipatory suits, and forum shopping." *Z-Line*

20

*Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (citation omitted). "The exception

21

for anticipatory suits is founded on a concern that the plaintiff should not be deprived of its traditional

22

choice of forum because a defendant with notice of an impending suit first files a declaratory relief action

23

over the same issue in another forum." *British Telecommc'ns v. McDonnell Douglas Corp.*, Case No. 93–

24

cv–00677 MHP, 1993 WL 149860, *3 (N.D. Cal. May 3, 1993).

25

Lyft's Declaratory Judgment Action is an anticipatory suit brought for the purpose of forum-

26

shopping. Anticipatory suits are viewed with disfavor as examples of forum-shopping and gamesmanship.

27

*See Z-Line Designs*, 218 F.R.D. at 665; *Xoxide, Inc.*, 448 F. Supp. 2d at 1192. Indeed, this Court has

28

recognized that allowing the first-to-file rule to apply in intellectual property cases involving anticipatory filings would "thwart settlement negotiations, as intellectual property holders would feel compelled to file suit rather than communicate with an alleged infringer." *Charles Schwab & Co. v. Duffy*, 1998 WL 879659, at *1 (N.D. Cal. Dec. 8, 1998) *accord Z-Line Designs*, F.R.D. at 665; *Nat'l Broom Co. v. Brookstone Co.*, 2009 WL 2365677, at *3 (N.D. Cal. July 30, 2009). When a party is prepared to file a lawsuit, but first attempts to participate in settlement discussions, "that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit." *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995); *see also Knapp v. Depuy Synthes Sales Inc.*, 983 F. Supp. 2d 1171, 1173, 1175–78 (E.D. Cal. 2013) (dismissing first-filed declaratory judgment action in favor of later action by true plaintiff).

The "Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse," however, that is exactly what Lyft is attempting to do with the instant declaratory judgment lawsuit. *Z-Line Designs*, 218 F.R.D. at 665 (citation omitted). Lyft intentionally brought up settlement discussions at regular intervals, misleading Quartz into believing that settlement negotiations between the parties would continue and that the filing of a lawsuit asserting the Additional Patents would not be immediately, if ever, required. Then, in the wake of its IPR losses, Lyft preemptively filed its lawsuit in its own selected forum to try and regain some of its perceived negotiating power. Indeed, the email from Lyft's counsel advising Quartz's counsel of its declaratory judgment complaint itself confirms that Lyft remained "happy to explore resolving this dispute without litigation." (Maloney Decl. ¶ 16.) Lyft's tactics deprived Quartz of its traditional choice of forum in an attempt to improperly gain an advantage over Quartz.

In short, permitting Lyft's anticipatory lawsuit to proceed would improperly reward Lyft for its gamesmanship and delay tactics, and unfairly punish Quartz for its efforts to resolve the parties' dispute amicably based on Lyft's own representations and for providing settlement related information requested by Lyft. This Court should recognize this unjust result and use its discretion to dismiss this case in favor of the Delaware Action.

## VI.      CONCLUSION

For the foregoing reasons, Quartz Auto respectfully requests that Lyft's First Amended Complaint be dismissed for lack of personal jurisdiction, and further pursuant to this Court's discretion under both the Declaratory Judgment Act and its discretion in applying an exception to the first-to-file rule.

Respectfully submitted,

Dated: May 24, 2021                                /s/ Jon A. Birmingham

Jon A. Birmingham (Cal. Bar No. 271034)
jbirmi@fitcheven.com
**FITCH, EVEN, TABIN & FLANNERY LLP**
20929 Ventura Boulevard, Suite 47403
Woodland Hills, California 91364
Telephone: (818) 650-1392
Facsimile: (312) 577-7007

*Attorney for Defendant*
QUARTZ AUTO TECHNOLOGIES LLC