UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYFT, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>QUARTZ AUTO TECHNOLOGIES LLC,<br><br>        Defendant. | Case No. 21-cv-01871-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 26 |

In this action, Plaintiff Lyft, Inc. seeks a declaratory judgment of non-infringement as to five patents for which Defendant Quartz Auto Technologies LLC has asserted ownership. Quartz has filed a motion to dismiss on three grounds: (1) that it is not subject to personal jurisdiction in this district; (2) that the Court should decline to exercise jurisdiction under the Declaratory Judgment Act; and (3) that the action should be dismissed under the anticipatory suit exception to the first-to-file rule. ECF No. 26. The Court will deny the motion.

First, Quartz is subject to specific personal jurisdiction in this district. "[C]ommunications sent into a state may create specific personal jurisdiction, depending on the nature and scope of such communications," and, "in the context of patent litigation, communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction." *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021). The parties do not dispute that Quartz's counsel communicated with Lyft's counsel, who is located in this district, by telephone eight times and by email twice during the seven-month period between July 2020 and February 2021. Quartz's principals sought to have a discussion with Lyft's principals, but there is no indication that such a discussion ever occurred. The communications between counsel included an hour-long phone call regarding an emailed presentation that discussed the five patents

at issue. At the time, one of those patents, U.S. Patent No. 7,958,215 ("the '215 Patent"), was the subject of an infringement action brought by Quartz in the Western District of Texas. Since the filing of Lyft's complaint in this case, the '215 Patent was dismissed from the Texas litigation for improper venue, and Quartz filed an infringement action in the District of Delaware that includes all five patents at issue here.[1]

The contacts began when Lyft's counsel contacted Quartz's counsel to discuss resolution of the Texas litigation. Although Quartz argues that Lyft is the party that "shifted and amplified the conversation" to extend beyond the patents at issue in that case, ECF No. 38 at 7, Quartz's counsel's own declaration indicates that he was the one who brought up the possibility of resolving issues related to other patents:

> Mr. Taylor [Lyft's counsel] asked about the type of settlement that Quartz had in mind and asked if Quartz had a specific monetary settlement demand. I explained that Quartz was willing to resolve not only the pending case *but also other pending issues* by providing a license under the patents asserted in the Texas Action ("Asserted Texas Patents") *and other patents owned by Quartz* in exchange for a lump sum settlement payment.

ECF No. 26-2 ¶ 5 (emphasis added). In subsequent communications, Quartz provided additional details regarding "the patents to be included, a more specific settlement range, and the basis for Quartz's settlement valuation," as well as "exemplary claim charts . . . provided for the purpose of demonstrating additional value of the portfolio license being discussed." *Id.* ¶¶ 7, 13.

Quartz's communications were far more extensive than those that the Federal Circuit found insufficient in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998). In that case, the court determined that sending three letters suggesting patent infringement and offering to negotiate a license was not sufficient to subject the defendant to personal jurisdiction. *Id.* at 1357, 1361. The court characterized the letters as "warning letters" and held that "[s]tandards of fairness demand that [the defendant] be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights." *Id.* at 1361. The court explained that "[a]n offer to license is more closely akin

---

[1] The Texas litigation continues as to four other patents not at issue in this case.

2

to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship." *Id.*

The Federal Circuit recently held that *Red Wing* was correctly decided on its facts but that "there is no general rule that demand letters can never create specific personal jurisdiction." *Trimble*, 997 F.3d at 1156. In *Trimble*, the court found the minimum contacts or purposeful availment test to be satisfied by the company's "far more extensive [contacts] than those in *Red Wing*" – twenty-two communications over three months – that "went far beyond solely informing a party who happens to be located in California of suspected infringement." *Id.* at 1156-57 (quotation marks, alteration marks, and citation omitted). Like Quartz in this case, the patent holder in *Trimble* "amplified its threats of infringement as the communications continued, asserting more patents and accusing more of [Lyft's] products of infringement." *Id.* at 1157. The Court does not find Quartz's failure to threaten litigation or send a draft complaint, or its failure to retain counsel in this district, to be dispositive. While those factors were present in *Trimble*, the Court concludes that Quartz's conduct relevant to the patents at issue in this case was sufficient to subject Quartz to personal jurisdiction. Quartz "deliberately reached out beyond its home," and Lyft's claims "arise out of or relate to [Quartz's] contacts" with this forum. *Id.* at 1153 (quotation marks and citations omitted). Although there were fewer communications by Quartz than those at issue in *Trimble*, the Court has no difficulty in concluding that Lyft's "attempts to extract a license in this case are much more akin to an arms-length negotiation in anticipation of a long-term continuing business relationship, over which a district court may exercise jurisdiction." *Id.* at 1157 (quotation marks and citation omitted). Also weighing in favor of a finding of jurisdiction are the facts that Lyft is headquartered in California, and that Quartz has entered into a license with Uber, another company that operates in this state. *Id.*

Because Quartz "purposefully has directed [its] activities at forum residents," it must, to defeat jurisdiction, "present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1153 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)) (emphasis in *Trimble*). The Supreme Court has recognized five factors to consider when making this determination: "(1) the burden on the defendant; (2) the forum's

3

interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1002 (Fed. Cir. 2018) (citing *Burger* King, 471 U.S. at 477). Quartz concedes that the second through fifth factors are neutral.[2] ECF No. 26 at 23-24; ECF No. 38 at 13-14. Thus, the question is whether Quartz has demonstrated a compelling case against jurisdiction based on the burden to Quartz of litigating in this district. It has not: Quartz is incorporated in Maryland and has filed suit against Lyft in both Texas and Delaware. The burden to litigate in California "is, at most, only slightly greater than litigating in [Quartz's] preferred fora." *Trimble*, 997 F.3d at 1158. In addition, any such burden is mitigated by the nature of Quartz's "primary business of asserting its patents," which "requires it to litigate far from" its offices.[3] *Id.* Quartz has failed to present a compelling case that jurisdiction would be unreasonable.

Second, the Court would be within its discretion to decline jurisdiction under the Declaratory Judgment Act if it concluded that "the declaratory judgment complaint [were] a tactical measure filed in order to improve [Lyft's] posture in the ongoing negotiations – not a purpose that the Declaratory Judgment Act was designed to serve." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed. Cir. 1996), *overruled in part on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). The Court does not reach that conclusion here. In *EMC*, the Federal Circuit determined that it was not an abuse of discretion for a district court to decline jurisdiction where the parties were involved in negotiations at the time the complaint was filed; there was no suggestion that the negotiations were a pretext designed to give the patentee a basis for keeping the alleged infringer from obtaining declaratory relief; the complaint was filed shortly

---

[2] Quartz's motion argues that the fourth factor weighs against a finding of jurisdiction, ECF No. 26 at 23-24, but its reply states that it is neutral, ECF No. 38 at 14. To the extent Quartz might contend its statement in the reply was an inadvertent error, the Court notes that Quartz's discussion of the fourth factor in its motion relied solely on the first factor. ECF No. 26 at 23.

[3] Quartz does not dispute Lyft's statement that "Quartz appears to be a non-practicing entity that generates revenue by monetizing its patent portfolio in various forums." ECF No. 34 at 6.

after the patentee informed the alleged infringer that it was beginning negotiations with other parties; and the alleged infringer characterized the filing of the complaint as "merely a defensive step" and indicated that it "would like to continue to discuss with [the patentee] all the options hopefully in a more meaningful manner over the near term." *Id.* Quartz makes much of Lyft's counsel's statement, in an email providing a courtesy copy of Lyft's complaint, that Lyft "is happy to explore resolving this dispute without litigation." ECF No. 26-6 at 2. But the same email also said that Lyft filed the action because it "does not infringe these patents and would like to clear its name with respect to Quartz's allegations." *Id.* The Court does not conclude from the record before it that Lyft filed the complaint only to gain a tactical advantage during negotiations with Quartz. To be sure, Lyft's filing of this suit might have had the practical "effect of placing [Lyft] in a more favorable negotiating position," but any such effect "is not a sufficient reason to decline to hear the suit." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1289 (Fed. Cir. 2007).

Finally, the anticipatory suit exception to the first-to-file rule does not apply here. "A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications that a suit by defendant was imminent." *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003). The record reveals no indications from Quartz, let alone specific and concrete ones, that it would be imminently filing a lawsuit regarding the patents at issue in Lyft's complaint.[4]

For all of the above reasons, Quartz's motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: September 7, 2021



JON S. TIGAR
United States District Judge

---

[4] The '215 Patent was part of the Texas litigation at the time this suit was filed and was not included in Lyft's original complaint. Lyft did not add the '215 Patent to this case until after the Texas court dismissed it for improper venue. While it might not have been unexpected for Quartz to file another lawsuit regarding the '215 Patent in a different venue, there is no indication in the record that the filing of such a suit was imminent.