UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LYFT, INC., <br>     Plaintiff, <br> v. <br> QUARTZ AUTO TECHNOLOGIES LLC, <br>     Defendant. | Case No. 21-cv-01871-JST (RMI) <br><br> **ORDER RE: DISCOVERY DISPUTES** <br> Re: Dkt. Nos. 101, 102 |

Now pending before the court are a pair of discovery disputes (dkts. 100, 102). As set forth herein, the undersigned finds that, pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the matters presented on both disputes are suitable for disposition without oral argument.

By way of background, Plaintiff ("Lyft") is engaged in the business of arranging and administering a peer-to-peer marketplace for on-demand ridesharing transportation services. *See* Compl. (dkt. 1) at 2. After acquiring a number of patents from one or more third parties, Defendant ("Quartz") contacted Lyft to allege that the patents (U.S. Patent Nos. 7,007,013; 9,691,275; 6,944,443; 6,847,871; and 7,958,215) (collectively the "Patents-in-Suit") were relevant to Lyft's operations such that Quartz sought to secure certain payments from Lyft "to license a portfolio including the Patents-in-Suit." *See* FAC (dkt. 15) at 2. In February of 2021, Quartz's counsel emailed Lyft's counsel to communicate the view that Lyft had infringed four of the Patents-in-Suit. *Id*. Given that Quartz had sued Lyft for infringement in another district – Lyft, in turn, filed the instant action in this court seeking a declaratory judgment of noninfringement as to each of the five Patents-in-Suit. *See id*. at 6-26. Through its Answer (dkt. 45), Quartz advanced three affirmative defenses (*id*. at 39); denied Lyft's claims and many of their supporting allegations (*see id*. at 1-39); and, in turn, Quartz presented five counterclaims for infringement as to each of the Patents-in-Suit. *See id*. at 43-79.

**Quartz's Motion to Compel (Dkt. 100)**

Quartz moves to compel further responses to its Interrogatory ("ROG") Nos. 1, and 2 through 6. *See* Ltr. Br. (dkt. 100) at 2. Quartz's ROG No. 1 asks Lyft to describe the factual and legal basis for the contention that Lyft's platforms and methods do not infringe the claims asserted in the Patents-in-Suit – directing Lyft to "explain[] in detail the basis and reasoning for each such contention." *See id.*, Exh. A (dkt. 100-1) at 3, 5. Quartz then contends that Lyft's responses in this regard operated only to "provide[] a conclusory statement listing nearly every limitation from the asserted claims as supposedly not present in its accused systems." *See id.* at 2. Regarding the level of specificity provided by Lyft, Quartz's portion of the letter brief essentially asserts that "each limitation requires additional detail explaining why Lyft believes it is not met." *Id*. However, Quartz does not provide any meaningful details or specifics as to how much more detail it seeks, or specifics as to which of Lyft's responses are attended with insufficient detail, or why – instead, as to ROG. No. 1, Quartz's portion of the letter brief has been painted with the broadest of brushes, simply asserting that Lyft's responses should be more detailed. *See generally id*. at 2-4. On the other hand, Lyft notes that Quartz's "deficient (and entirely conclusory) infringement contentions impede [Lyft's] ability to [provide additional detail] without additional clarity from [Quartz] regarding how the accused technology could even possibly meet certain limitations." *Id*. at 4. More specifically, Lyft contends "that the accused technologies simply do not perform certain elements of the asserted claims [and] [i]n several of these instances, [Quartz] itself has not pointed to any aspect of the accused technology that meets those limitations, and cannot do so, making [Quartz's] request for additional detail virtually impossible to fulfill." *Id*. Lyft then stated that Quartz's argument in this regard attempts to saddle Lyft with the burden of disproving infringement: "Quartz vaguely alleges infringement and asks Lyft to provide a detailed explanation for why infringement is not possible." *Id*. at 5. At bottom, Lyft contends that its response to the effect "that the accused functionality fails to meet meaningful requirements of the asserted claims directly responds to the interrogatory, but Lyft is happy to rephrase its response to confirm that Quartz fails to provide sufficient evidence of infringement for these limitations, if preferred." *Id*.

1    "[T]he movant has the initial burden of demonstrating relevance." *See United States v.*
2    *McGraw-Hill Companies, Inc.*, Case No. CV 13-779-DOC (JCGx), 2014 U.S. Dist. LEXIS
3    197500, 2014 WL 164738, at *8 (C.D. Cal. 2014); *see also Apple Inc. v. Samsung Electronics Co.*
4    *Ltd.*, Case No. 12-CV-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 91450, 2013 WL 3246094, at
5    *21 n.84 (N.D. Cal. 2013) ("In this district, the party moving to compel has the burden of showing
6    relevance."); *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) ("[I]n general the
7    party seeking to compel discovery bears the burden of showing that his request satisfies the
8    relevance requirement of Rule 26."). Most importantly for present purposes, conclusory statements
9    are insufficient to establish a movant's entitlement to discovery because, under Rule 26, "[a] party
10   claiming that a request is important to resolve the issues should be able to explain the ways in
11   which the underlying information bears on the issues as that party understands them." *See Apple*
12   *Inc. v. Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD, 2018 U.S. Dist. LEXIS 137539, at *17-18
13   (S.D. Cal. Aug. 14, 2018) (quoting *Medicinova Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-
14   L(KSC), 2017 U.S. Dist. LEXIS 101450, 2017 WL 2829691, at *5 (S.D. Cal. June 29, 2017)
15   (citing Fed. R. Civ. P. 26(b) advisory committee's note (2015 amendments)). Thus, conclusory
16   statements, or unsupported arguments, as to why the issuing party believes it is entitled to an order
17   compelling discovery are insufficient to establish relevancy. *See Apple Inc. v. Qualcomm Inc.*,
18   2018 U.S. Dist. LEXIS 101450 at *17-18 (citing *Leadership Studies, Inc. v. Blanchard Training*
19   *and Development, Inc.*, Case No. 15cv1831-WQH(KSC), 2017 U.S. Dist. LEXIS 100435, 2017
20   WL 2819847, at *6 (S.D. Cal. June 28, 2017) ("Based on the foregoing, plaintiff's conclusory
21   arguments about relevance and proportionality are not enough to convince the Court that it is
22   entitled to an order compelling defendant to produce all of the [discovery in question].").

23   In light of these authorities, and given Quartz's failure to explain, with any degree of
24   specificity, what additional details (to which it would be entitled) are missing from Lyft's response
25   to ROG No. 1, the undersigned finds that Quartz has failed to carry its burden of establishing its
26   entitlement to an order compelling Lyft to provide any further detail at all in this regard. Once
27   again, Quartz has only stated that it wants "more" details, but it has not explained the precise
28   nature of the alleged shortcomings in Lyft's response, or the nature and extent of the additional

3

1    information it seeks – instead, Quartz has only baldly stated that it wants more. Ironically,

2    Quartz's quest for more detail in this regard must fail because the request itself is wholly devoid of

3    any detail. Thus, Quartz's request as to ROG No. 1 is **DENIED**.

4          As Quartz puts it, ROG Nos. 2 through 6 "seek basic information about relevant

5    functionalities of Lyft's accused methods and platforms." *See* Ltr. Br. (dkt. 100) at 2. Specifically,

6    Quartz seeks narrative descriptions of the step-by-step process by which the Lyft Platform

7    matches riders to drivers and coordinates pick-up (ROG No. 2); the name of, and functionality

8    provided by, any software modules involved in each step identified in response to ROG No. 2

9    (ROG No. 3); a description of the data collected and used to provide monitoring and notification

10   features (ROG No. 4); a description of the information available to Lyft's algorithms when

11   considering which driver to match with a rider, and how the algorithms process the information to

12   create a match (ROG No. 5); and, a narrative description of the step-by-step process of Lyft's

13   "Smart Trip Check-In" feature (ROG No. 6). *Id*. Quartz's dissatisfaction with Lyft's interrogatory

14   responses has been expressed as follows: as to ROG No. 2, Lyft's description of its matching

15   process was reportedly insufficiently expounded and, relying on Rule 33(d), the response directed

16   Quartz to Lyft's source code (which had been tendered in discovery); generally speaking, as to

17   ROG Nos. 3 through 6, Quartz complains that Lyft has stated that it "has produced and will be

18   producing" documents (including source code) from which responsive information could be

19   determined without providing pinpoint citations (except in one case); more specifically, as to ROG

20   No. 4, Quartz similarly asserts that Lyft's description was limited to "a cursory description of

21   three exemplary types of data it collects and a single example of how such data may be used"; as

22   to ROG No. 5, Lyft referred Quartz "generally to its source code"; lastly, as to ROG No. 6, Quartz

23   complains that while Lyft "provided some detail regarding conditions that can activate its Smart

24   Trip Check-In functionality," followed by "a bare cite to five documents (which still do not

25   answer the interrogatory) and its source code," notwithstanding a supplementation regarding

26   newly cited documents, Quartz maintains that "[f]our of the five documents now identified are

27   seemingly irrelevant." *See id*. at 3. However, Quartz's portion of the letter brief is silent regarding

28   that relevant fifth document – leaving the undersigned to wonder what remains in dispute in this

4

regard.

Beyond this, Quartz complains in general terms about how Lyft's interrogatory answers were incomplete and how Lyft "insisted that [Quartz] conduct a code inspection and then identify what additional information [it] thought it still needed." *Id*. Quartz then goes on to repeat – in what the undersigned finds to be a generalized and largely conclusory fashion – that Lyft's objections and interrogatory responses were insufficiently specific and therefore inadequate, reportedly leaving Quartz in the dark as to Lyft's contentions about how its own systems work. *Id*. Further, Quartz also submits that Lyft "failed to identify even a single knowledgeable person as requested." *Id*. At bottom, conceding that Rule 33(d) allows such reference to documents as has been made here by Lyft in responding to written discovery, Quartz submits that such is only the case when the burden of deriving or ascertaining the answer will be substantially the same for either party. *Id*. However, Quartz argues that "[t]he burdens here are not the same . . . [because] Lyft, unlike Quartz, is intimately familiar with its own source code, and can more readily ascertain responsive information within this haystack." *Id*.

For its part, Lyft notes that its efforts to work through these issues with Quartz have been frustrated by Quartz's reportedly uncooperative approach to the meet and confer process, and by the assertion that Quartz's reportedly deficient and conclusory infringement contentions "impede [Lyft's] ability to [provide further detail in interrogatory responses] without additional clarity from [Quartz] regarding how the accused technology could even possibly meet certain limitations." *Id*. at 4. Lyft notes that it "has confirmed that the accused technology does not perform certain claim limitations based on [Quartz's] insufficient infringement contentions[] [and] [w]ithout further explanation on how the accused technology could possibly meet these limitations or a specific articulation of what additional information [Quartz] is seeking" Lyft submits that it "is not able to provide a more robust response." *Id*. at 5. When asked what additional information Quartz sought, Defense counsel was reportedly "unable to identify anything[, and] simply [] stated that they wanted 'more detail.'" *Id*. As noted above regarding ROG No. 1, without articulating what other details are required, and why Quartz should be entitled to those details, the undersigned is inclined to agree with Lyft that Quartz's bald request for "more" detail is due to be denied.

5

As to Quartz's complaints about the volume of Lyft's source code – to which some interrogatory responses refer – Lyft submits that "this complaint ignores the breadth of the [interrogatory] requests." *Id*. at 6. As to ROG Nos. 2 and 3, Lyft notes that they seek "information on the entire rider/driving matching process, 'from the time a rider requests a ride using the Rider App to the time a driver arrives at the requesting rider's location to pick up the rider,'" while ROG No. 6 "mirrors the breadth of this request, but for Lyft's Smart Trip Check-in feature." *Id*. at 6. Lyft notes that, similarly, ROG No. 4 requests all "telemetry data associated with the mobile devices of Users (e.g., position, speed, bearing, acceleration, deceleration, elevation, timestamp, etc.) collected by the Lyft Platform and [an explanation as to] how the Lyft Platform processes and uses the telemetry data to support and provide the Monitoring and Notification Features." *Id*. (internal quotations and punctuation omitted). As to Quartz's contention that "Lyft [] failed to identify even a single knowledgeable person as requested" (*see id*. at 3), Lyft rejects this suggestion by noting that it has identified "persons in its initial disclosures that have information relevant to these interrogatories." *Id*. at 6.

Lastly, regarding Quartz's apparent desire to avoid the labor associated with reviewing Lyft's source code in pursuit of its desire for a deeper understanding of Lyft's interrogatory responses, Lyft submits that Quartz has not been left to blindly inspecting source code files (as contended), instead Lyft states that Quartz has all the tools necessary for a meaningful review at its disposal, including a list of persons identified in Lyft's initial disclosures that possess information relevant to the interrogatories in question. *Id*. Beyond that, Lyft states that Quartz's desire to avoid a source code review is part of its pattern of saddling Lyft with the burden of disproving infringement which Lyft contends would require it to hire an expert to examine its source code through the lens of the claims and limitations of the Patents-In-Suit and Quartz's infringement contentions. *Id*. In other words, Lyft asserts that the parties would be similarly situated regarding the burden associated with deriving or ascertaining, from Lyft's source code, the seemingly nebulous contours of the "more detail" sought by Quartz as to why Lyft's systems do not infringe the claims and limitations of the Patents-In-Suit. *Id*.

At the outset, the court will note that the essence of the discovery disputes described above

– to wit, Quartz's approach to framing the interrogatories in question – is akin to a remarkably similar dispute that unfolded in *Rates Tech. Inc. v. Mediatrix Telcom, Inc.*, No. CV 05-2755 (JS) (AKT), 2008 U.S. Dist. LEXIS 120288, at *24 (E.D.N.Y. Mar. 31, 2008). As is the situation in the case at bar, the plaintiff in *Rates Tech* argued that "Mediatrix should be ordered, separately for each claim limitation of the Patents-in-suit that it identified in its original responses to RTI's Interrogatories Nos. 2 and 4, to state the basis for its contention that each of its accused products and services, and/or the telephone system to which they are connected, fails to meet such claim limitations, including by identifying on an element-by-element basis why they allegedly fail to meet such elements of those claim limitations." *Id.* at *23-24. The *Rates Tech* plaintiff argued that "it was entitled to obtain this information through discovery in order to develop its infringements claims and supplement its pre-filing investigation." *Id.* at *24. As is also the case in the case at bar, the defendant in *Rates Tech* "argued that Plaintiff is seeking to have it 'disprove infringement,' which is not the appropriate standard . . . [and] that it is impossible to answer 'why' various claim elements are not present in the accused Mediatrix products because, as Defendants' Answer states, Defendants' product physically lack[s] the elements." *Id*. Finding itself in agreement with Mediatrix's arguments, the *Rates Tech* court denied the plaintiff's motion to compel the very sort of "more details" sought by Quartz in this case. *Id*.

As one court has put it, once a party seeking to establish infringement in a software case secures access to the other party's source code, that party no longer has any excuse to propound such unreasonably broad interrogatory demands that are based on vague infringement contentions:

> In non-software patent cases, plaintiffs are usually able to purchase defendants' products and ascertain the mechanics of how those products infringe before plaintiffs bring suit. But, there are times when plaintiffs' preparation is restricted by defendants' sole possession of the information plaintiffs need. Software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself. From this manifestation, plaintiffs must somehow divine whether the defendants' code infringes. Although defendants vigorously and rightly guard their source code, until plaintiffs have access to it, plaintiffs are typically unable to give highly specified infringement contentions. To the extent defendants are given vague infringement contentions, they are hampered in their ability to prepare their defense. In these situations, through Rules 3-6 and 3-7, the

7

> Patent Rules recognize the preliminary nature of plaintiff's preliminary contentions accommodate plaintiffs' need to supplement their initial contentions.
>
> *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560-61 (E.D. Tex. 2005).

However, the instant case is not one where a lack of access to Lyft's source code has saddled Quartz with the challenges described in *Am. Video Graphics*. Instead, although Lyft has given Quartz access to its source code, Quartz simply wants to avoid the laborious process of scrutinizing that source code to the degree necessary to glean the "more details" it seeks.

Rule 33(d) permits a responding party to answer an interrogatory by directing the proponent to "a party's business records . . . if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). If Quartz's interrogatories had asked Lyft to provide narrative descriptions of the functionality of its platform and systems, Lyft would not have been justified in *only* referring Quartz to the entirety of its source code in reliance on Rule 33(d). *See*, *e.g.*, *Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, No. 13cv1523-BEN (BLM), 2014 U.S. Dist. LEXIS 141426, at *20 (S.D. Cal. Oct. 3, 2014) ("Plaintiff will face a significant burden in having to learn the functionality of Defendant's products and understand the structure of Defendant's source code."); *Facedouble, Inc. v. Face.com, Inc.*, No. 12cv1584-DMS (MDD), 2014 U.S. Dist. LEXIS 19245, at *5-6 (S.D. Cal. Feb. 13, 2014) ("This interrogatory asks Defendant to describe, in narrative form, the steps by which the accused technology provides facial recognition. Defendant again relied upon Rule 33(d) in its response stating that it had provided Plaintiff a copy of its source code. Plaintiff argues that this response is insufficient. The Court agrees with Plaintiff."); *LaserDynamics, Inc. v. Asus Comput. Int'l*, No. 2:06-CV-348, 2009 U.S. Dist. LEXIS 3878, at *8 (E.D. Tex. Jan. 21, 2009) ("The defendants' reliance on Rule 33(d) is improper. The interrogatories are directed to the functionality of the defendants' own products. It is implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate.").

Given these authorities, the undersigned has carefully reviewed Quartz's ROG Nos. 2-6 (*See* Ltr. Br., Exh. B (dkt. 100-1) at 6-7) and finds that they sufficiently seek information about the functioning of Lyft's platform and systems such that a bald reference to the entire body of Lyft's

source code, without more, would be insufficient – if that was what Lyft had done. However, Lyft's responses were by no means limited to directing Quartz to its source code with nothing more. *See* Pl.'s Admin. Mot., Exh. B (dkt. 108-3 *SEALED*) at 14-28. Contrary to Quartz's representations (*see* Ltr. Br. (dkt. 100) at 3-4) about the "cursory," "nonspecific," and "incomplete" responses that "relied primarily on Rule 33(d)," a review of Lyft's actual responses (*see* Pl.'s Admin. Mot., Exh. B (dkt. 108-3 *SEALED*) at 14-28) reveals a different picture. Subject to a number of objections, Lyft has nevertheless provided the narrative descriptions and citations to specific repositories within its source code that Quartz contends are missing. *See id*. In the end, as was the case with ROG No. 1, Quartz's failure to explain, with sufficient specificity, what additional details (to which it would be entitled) are missing from Lyft's responses to ROG Nos. 2-6, or why the citations to specific source code repositories are inadequate, the undersigned finds that Quartz has failed to carry its burden of establishing its entitlement to an order compelling Lyft to provide any further detail at all in this regard. As was the case with ROG No. 1, Quartz has only stated that it wants more details and more specific citations to source code repositories, but it has not explained the precise nature of the alleged shortcomings in Lyft's responses, or the nature and extent of the additional information it seeks – instead, all that is clear is that Quartz simply wants more. Thus, Quartz's request to compel Lyft to provide further responses to ROG Nos. 2-6 is **DENIED**.

### **Lyft's Motion to Compel (dkt. 102)**

In a second set of discovery disputes, Lyft moves to compel the production of certain information that is embodied in a single interrogatory and two requests for production. *See generally* Ltr. Br. (dkt. 102) at 1. Lyft seeks to compel the production of the following information: a description of the nature of any direct or indirect financial interest in this case, separately set forth as to any individual or entity having such interest, including an identification of all agreements and draft agreements with such individual or entity relating to patents, patent applications, licenses, assignments, or to this case (ROG No. 1); any documents or things conveying any rights to the asserted patents or related patents, including all patent or technology license agreements, or covenanting not to sue, and all documents, things, or communications

9

relating thereto (RFP No. 6); and, documents or things sufficient to show negotiations, offers, licenses, payments, royalties, technology transfers, authorizations to use, or covenants not to sue relating to the asserted patents or related patents, including but not limited to documents, things, and communications evidencing any efforts by Quartz (successful or otherwise) to enter into any such agreement. *See id*. Lyft submits that "Quartz [has] admitted it is withholding information regarding persons/entities who may hold an interest in this litigation and refuses to produce that information solely based on the argument that such information is not relevant to this case." *Id*.

Lyft submits that this information is relevant on three accounts: (1) Lyft contends that the information is rendered relevant due to the terms of Civil L.R. 3-15 which requires disclosure of all persons who have an interest that could be substantially affected by the outcome of the proceedings; (2) Lyft also asserts that the information "is relevant to [] determin[ing] whether Quartz owns all substantial rights in the asserted patents," which Lyft contends is necessary for determining Quartz's standing; and, (3) Lyft argues that the information is necessary to discovering and gauging the potential biases of third-party witnesses. *Id*. at 2. As to RFP Nos. 6 & 7, Lyft submits that the information encompassed therein is "directly relevant to core issues in this case such as the purported value and the invalidity of the asserted patents." *Id*. at 3. As to damages, Lyft submits that these documents (evidence of proposed patent license terms) would "provide direct evidence probative of a reasonable royalty for the Asserted Patents," such as would be relevant under factors 4, 9, 10, and 12, of the fifteen non-exclusive factors set forth in *Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), for determining a reasonable royalty measure of damages in patent cases. *See* Ltr. Br. (dkt. 102) at 3, n.1. Lyft adds that the withheld documents are also relevant to Quartz's claims regarding secondary considerations of non-obviousness; that is, because Quartz has identified an Uber license as evidence of "industry recognition," Lyft submits that "Quartz cannot now withhold other attempts to license its patents to other members of the same industry or the basis for any such license." *Id*. As Lyft puts it, "if Uber entered into a license simply to avoid the cost of litigation, Quartz's claim of industry recognition would lack merit, and the negotiations with Uber would likely reveal the motivations unpinning the license." *Id*.

1    Quartz objects that ROG No. 1 is impermissibly broad because: "person" is defined to
2  include natural persons and legal entities; because it asks for a description of financial interests
3  that "each" such person may have in the outcome of this litigation; because it calls for a
4  description of the "nature" of any such "direct or indirect" financial interests; and, because it asks
5  for "an identification of all agreements and draft agreements" with said persons "that relate to the
6  Lawsuit or any patent, patent application, license, or assignment, regardless of their subject matter
7  or relevance." *Id*. at 4. Quartz then submits that it has already provided Lyft documents that
8  "confirm that Quartz is the sole present owner of the asserted patents . . . [as well as] disclos[ing]
9  the details of a financial interest that a third party holds in any proceedings from this lawsuit and
10 that does not restrict Quartz in any way that could implicate Quartz's standing to sue." *Id*.
11 Additionally, Quartz asserts that "providing a description of the 'nature' of any financial interest"
12 would be overly burdensome because "the burden for Lyft to ascertain the information it sought
13 from the produced agreements was less than the burden would be on Quartz to guess what
14 information Lyft was seeking." *Id*.

15    As an initial matter, the court will note that Lyft's effort to enforce the strictures of Civil
16 L.R. 3-15 through the rubric of a motion to compel discovery is not well taken. Because the body
17 of law pertaining to the compelled production of discovery is attended with its own standards –
18 standards that are not necessarily associated with asserted violations of the disclosure provisions
19 of Civil L.R. 7.1 and 3-15 – the undersigned is of the view that a more proper method of enforcing
20 Rule 3-15's disclosure requirements would be through an administrative motion that would be
21 addressed to the presiding judge. *See*, *e.g.*, *Stewart v. Screen Gems-Emi Music, Inc.*, No. 14-cv-
22 04805-JSC, 2015 U.S. Dist. LEXIS 4091, at *6 (N.D. Cal. Jan. 13, 2015) (granting an
23 administrative motion to compel disclosures under Rules 7.1 and 3-15, such as to force a
24 recalcitrant party "to comply with the same Rules with which every litigant that appears in the
25 Northern District of California has to comply.").

26    Lyft's other arguments (both as to ROG No. 1, and RFP Nos. 6 & 7) in seeking this
27 information, on the other hand, are largely well taken. In short, the undersigned does not find it
28 necessary to render a detailed recitation of the authorities relied upon by the Parties' remaining

11

arguments, the undersigned will simply note that Quartz's arguments resisting the discovery Lyft seeks (as set forth above) are largely unpersuasive for the reasons advanced by Lyft (also set forth above). As to ROG No. 1, Quartz's objections are **OVERRULED in part, SUSTAINED in part**. The undersigned is unpersuaded by all of Quartz's overbreadth objections with one exception (that is, the lack of apparent relevance to identifying draft agreements with persons having financial interests in the outcome of this case). Lyft has not explained a basis for a relevance finding as to such draft agreements. As to that point, Lyft's portion of the letter brief offers two versions of the phrasing of this particular request to compel – one where it also seeks drafts of such agreements (*see id*. at 1) and one where it doesn't (*see id*. at 2). Because the undersigned is unable to see the relevance or purpose in Quartz's identification of the drafts of such documents, Lyft's request "that the Court order Quartz to supplement its response to Interrogatory No. 1 to identify all parties who have ownership or financial interests in Quartz, describe the nature of those relationships, and identify any agreements in connection with the same" is **GRANTED** as to this exact phrasing, and **DENIED** as to the phrasing that would also include the identification of such "draft agreements." As to RFP Nos. 6 & 7, Quartz's objections are **OVERRULED** and Lyft's request to compel the materials encompassed therein is **GRANTED**. Quartz's concerns regarding privacy and confidentiality can be appropriately addressed under the provisions of the protective order (dkt. 83) in place in this case, and any concerns of privilege that may arise in the course of production can be addressed under the usual procedure of noting and explaining such concerns on a privilege log such that disputes about the viability of such assertions of privilege can be brought before the undersigned in a narrowed and concrete fashion.

**IT IS SO ORDERED.**

Dated: November 18, 2022

ROBERT M. ILLMAN
United States Magistrate Judge